916 So.2d 728 (2005)
Jim Eric CHANDLER, Petitioner,
v.
James V. CROSBY, Jr., etc., Respondent.
No. SC04-518.
Supreme Court of Florida.
October 6, 2005.
Rehearing Denied December 9, 2005.
*729 Neal Andre Dupree, Collateral Regional Counsel-South and Martin J. McClain, Special Assistant, CCRC-South, Fort Lauderdale, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, FL, for Respondent.
PER CURIAM.
Jim Eric Chandler petitions this court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const.
Chandler was convicted of two counts of first-degree murder, and the trial court sentenced him to death. After this Court ordered resentencing, the trial court reimposed the death sentences and we affirmed. Chandler v. State, 534 So.2d 701 (Fla.1988). The facts and procedural history of this case are set out fully in this Court's prior opinions. See id.; Chandler v. State, 442 So.2d 171, 175 (Fla.1983) (affirming convictions; remanding for resentencing because of trial court error in excusing two prospective jurors for cause); Chandler v. State, 634 So.2d 1066 (Fla. 1994) (affirming trial court's denial of postconviction relief and denying relief on eleven habeas issues).
Chandler now petitions this Court for a writ of habeas corpus, claiming that the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), compels the reversal of his convictions and sentences. In Crawford, the Supreme Court held that a testimonial hearsay statement is inadmissible at trial unless the declarant is shown to be unavailable and the party against whom the statement is admitted had an opportunity for cross-examination. Id. at 68, 124 S.Ct. 1354. Because we find that Crawford does not apply retroactively, we deny the petition for a writ of habeas corpus.
In deciding whether a new rule should apply retroactively, this Court balances two important considerations: (1) the finality of decisions; and (2) the fairness and uniformity of the court system. Witt v. State, 387 So.2d 922, 925 (Fla.1980). In Witt, we stated that a new rule of law will not apply retroactively unless the new rule "(a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance." Id. at 931. The rule in Crawford meets the first two Witt factors, as it was a decision of the United States Supreme Court concerning the Sixth Amendment's Confrontation Clause.
Under Witt, a decision is of fundamental significance when it either places "beyond the authority of the state the power to regulate certain conduct or impose certain penalties" or when the rule is "of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of Stovall [v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967),] and Linkletter [v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965)]." Witt, 387 So.2d at 929. The Crawford rule did not change the power of the State to regulate certain conduct or impose certain penalties; rather, it is a procedural rule that controls the admissibility of testimonial hearsay. Thus, the Crawford rule can only apply retroactively under Florida law if retroactive application is deemed necessary after assessing the Stovall and Linkletter factors, which are *730 "(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule." Id. at 926.
The first factor weighs against retroactivity. Crawford overruled the decision in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Crawford, 541 U.S. at 68, 124 S.Ct. 1354. Roberts permitted courts to admit testimonial hearsay, provided the statements bore "adequate `indicia of reliability.'" 448 U.S. at 66, 100 S.Ct. 2531. In overruling Roberts, the United States Supreme Court considered the history of the confrontation clause and concluded that testimonial hearsay could only be admitted, in accordance with the intentions of the framers of the Sixth Amendment, upon a demonstration that the declarant is unavailable and that a defendant had a prior opportunity for cross-examination. Id. at 68, 124 S.Ct. 1354. This rationale for the new rule weighs against its retroactive application because the rule's purpose is not to improve the accuracy of trials or even to improve the reliability of evidence. The Supreme Court noted that the confrontation clause does not require that evidence be reliable "but that reliability be assessed in a particular manner." Crawford, 541 U.S. at 61, 124 S.Ct. 1354; see Windom v. State, 886 So.2d 915, 951 (Fla.2004) (Cantero, J., specially concurring) (citing Allen v. Hardy, 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), for proposition that retroactive application is appropriate if new rule is designed to enhance accuracy of criminal trials).
The second factor also weighs against retroactive application. The rule in Roberts was relied on by trial courts for over twenty years. Cf. State v. Callaway, 658 So.2d 983, 987 (Fla.1995) (fact that old rule existed for short time weighed in favor of retroactive application). The Roberts reliability factors were the only method of admission for testimonial hearsay statements; thus, much testimony was likely admitted under them. See, e.g., State v. Abreu, 837 So.2d 400, 402 (Fla.2003); Farina v. State, 679 So.2d 1151, 1157 (Fla. 1996), receded from by Franqui v. State, 699 So.2d 1312, 1320 (Fla.1997); Perez v. State, 536 So.2d 206, 209 (Fla.1988); Glendening v. State, 536 So.2d 212, 217 (Fla. 1988). Indeed, "Crawford has changed confrontation analysis enormously. Its concrete impact was immediate and substantial in both appellate and trial courts on the evidence rendered inadmissible." Robert P. Mosteller, Crawford v. Washington: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L.Rev. 511, 512 (2005). Thus, since much testimonial hearsay was admitted under the old rule, retroactive application is not required.
Finally, the third factor weighs against retroactivity. Given the extent of reliance on Roberts, if Crawford applied retroactively, the administration of justice would be greatly affected. Retroactive application could require courts to "overturn convictions" and "delve into stale records to" determine whether defendants had a chance to cross-examine unavailable witnesses. Callaway, 658 So.2d at 987. When new trials were determined necessary to correct errors under Crawford, the justice system would then have to deal with a multitude of problems, including lost evidence and unavailable witnesses. See Windom, 886 So.2d at 952 (Cantero, J., concurring) (noting similar problems would arise should Ring apply retroactively). Such retroactive application would "destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond *731 any tolerable limit." Witt, 387 So.2d at 929-30.
Thus, all three factors in the Witt analysis weigh against the retroactive application of Crawford. The new rule does not present a more compelling objective that outweighs the importance of finality. State v. Glenn, 558 So.2d 4, 7 (Fla.1990). Chandler's petition for a writ of habeas corpus is therefore denied.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., specially concurs with an opinion, in which CANTERO and BELL, JJ., concur.
ANSTEAD, J., specially concurs with an opinion, in which PARIENTE, C.J., concurs.
LEWIS, J., concurs in result only.
WELLS, J., concurring specially.
I concur in the majority's decision that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), does not apply retroactively and to deny the petition.
I write to express my view that this Court should apply Florida Rule of Criminal Procedure 3.851 as written and hold that the Crawford decision does not provide a viable basis for a successive rule 3.851 motion. The rule provides:
(d) Time Limitation.
. . . .
(2) No motion shall be filed or considered pursuant to this rule if filed beyond the time limitation provided in subdivision (d)(1) unless it alleges that
. . . .
(B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively....
(Emphasis added.) The time limitation of subdivision (d)(1) is "within one year after the judgment and sentence become final." "Final" is defined in subdivisions (d)(1)(A) and (B).[1]
Plainly, the components of the rule indicate that no rule 3.851 motion shall be filed or considered beyond one year after the judgment and sentence become final unless (1) there is a fundamental constitutional right asserted; (2) the constitutional right asserted was not established within one year of when the judgment and sentence became final; and (3) the fundamental constitutional right asserted that was not established within the one-year period has been held to apply retroactively. Based upon these components of the rule, a motion not filed within the one-year time requirement  an untimely motion  must assert that a new constitutional right "has been held to apply retroactively" in a case decided before the motion was filed in order for the motion to be "filed and considered."
This Court has not dealt with this language in any of the cases recently filed in this Court asserting claims based upon Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Rather, this *732 Court has proceeded to a consideration of Ring claims on other bases and has simply failed to recognize that the rule requires that untimely postconviction collateral claims for relief must assert that Ring "has been held to apply retroactively." Obviously, because Ring has not been held to apply retroactively, there could not be such a good-faith assertion in any case in which Ring has been asserted originally in this Court. The Ring claims therefore should have been dismissed on that basis.
Our not having dismissed the Ring claims on this basis has apparently been read as a signal that we would not observe the retroactivity requirement for untimely motions in the rule with respect to any other claims of new constitutional rights. As a result, we have received habeas petitions raising other cases that establish new constitutional rights that have not been held to apply retroactively. This case demonstrates that point.
Other sections of rule 3.851 that are applicable to these filings are subdivisions (a) and (d)(3) because many of the filings are filed in this Court as petitions for writs of habeas corpus. These subdivisions state:
(a) Scope. This rule shall apply to all motions and petitions for any type of postconviction or collateral relief brought by a prisoner in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all postconviction motions filed on or after October 1, 2001. Motions pending on that date are governed by the version of this rule in effect immediately prior to that date.
. . . .
(d) Time Limitation.
. . . .
(3) All petitions for extraordinary relief in which the Supreme Court of Florida has original jurisdiction, including petitions for writ of habeas corpus, shall be filed simultaneously with the initial brief filed on behalf of the death-sentenced prisoner in the appeal of the circuit court's order on the initial motion for postconviction relief filed under this rule.
I make this point because petitioner has filed his present claim in this Court as a petition for a writ of habeas corpus. However, under our rule, what Chandler asserts in his petition is not to be asserted in a habeas petition; rather, if his was a timely claim, it would properly be brought in the trial court in a rule 3.851 motion.
The retroactivity provision that is the focus of my opinion has been in our postconviction rule since 1984. See Fla. Bar re Amendment to Rules of Crim. Pro., 460 So.2d 907 (Fla.1984) (amending Fla. R.Crim. P. 3.850). The rule was adopted as an express provision of rule 3.851 with the 2000 amendments to the rule. Amendments to Fla. Rules of Crim. Pro., 772 So.2d 488 (Fla.2000).
As earlier stated, section (d)(2)(B) should be applied as written. This means the following with respect to applications of new rules of constitutional law.
(1) In cases in which a rule of constitutional law is changed prior to the case being final, as defined in rule 3.851(d)(1)(A) and (B), the case is considered a "pipeline" case, and the changes are applied to it.
(2) After the case becomes "final," as defined in rule 3.851(d)(a)(A) and (B), any changes in the law that occur within one year from that case becoming final may be raised in a rule 3.851 motion.
(3) Any changes in the law that occur after the one-year period referred to in application (2) above can only be raised in *733 a postconviction motion if the change of law has been held to apply retroactively.
A plain application of the rule means that a prisoner filing a timely initial postconviction motion may assert a claim based upon a new rule of constitutional law. This assertion necessarily includes the issue of retroactivity of the new rule of constitutional law to final judgments and sentences. Under our case law and procedure with respect to timely initial motions, the decision on retroactivity can be made by the circuit court on the basis of Witt v. State, 387 So.2d 922 (Fla.1980). This Court would review the retroactivity issue in its review of the circuit court's decision on the rule 3.851 motion.
A plain application of the rule also means that an untimely 3.851 motion cannot properly assert as a claim for relief a new rule of constitutional law unless the change has been held to apply retroactively. The phrase "has been held" can have no reasonable construction but that the decision that the rule applies retroactively has already been made at the time relief is claimed in the motion on the basis of the new rule. Under this procedure, then, an untimely motion that does not assert that the new constitutional rule has been held to apply retroactively should be dismissed either as not stating a basis for which relief can be granted or as procedurally barred. This should be the decision of this Court as to all of the pending untimely filings raising Ring, Crawford, or other claims of new constitutional rights.
Petitioner argues that he must have the right to raise a claim based upon a new constitutional rule so as to get the benefit of it before there is a ruling on retroactivity or in order to obtain a decision that the new constitutional rule is to be applied retroactively. I conclude that this argument is not correct.
This Court and the United States Supreme Court have often stated a deep-seated commitment to finality and stability in the law. This requires the enforcement of the premise that the common law is as it was before a judgment or sentence became final until there is an actual decision that final judgments are affected by the new rule of constitutional law.[2] This is the premise upon which the Witt decision is based. This is the premise upon which the Supreme Court bases its decisions which have their roots in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and upon which the 1996 federal habeas act in respect to successive habeas petitions by state prisoners is founded. See 28 U.S.C. § 2244(b)(2) (2000). In fact, until the new rule is determined to apply retroactively, the law remains the same as to final judgments and sentences, and only in rare instances should cases be held to apply retroactively according to Witt and Teague.
The rule does provide a prisoner the opportunity to file an untimely rule 3.851 motion based upon a new rule of constitutional law within a year of a decision which holds that the new rule is to be applied retroactively. It is at this time that judgments or sentences which are final and which are beyond the one-year period are subject to collateral attack.
The same provision of the pre-2001 rule was given effect by this Court's decision affirming the denial of a rule 3.850 motion *734 as untimely in Johnson v. State, 536 So.2d 1009 (Fla.1989). In Johnson, this Court stated:
Johnson's suggestion that the rule is somehow ambiguous is utterly without merit. We also reject his contention that his claims fall within one of the two exceptions to the application of the time limit. The evidence upon which Johnson makes his argument was always in existence, and if it was unknown to Johnson or his attorney, it could have been ascertained by the exercise of due diligence. Likewise, there are no new fundamental constitutional rights now being asserted which have been given retroactive application.

. . . .
The credibility of the criminal justice system depends upon both fairness and finality. The time limitation of rule 3.850 accommodates both interests. It serves to reduce piecemeal litigation and the assertion of stale claims while at the same time preserves the right to unlimited access to the courts where there is newly discovered evidence or where there have been fundamental constitutional changes in the law with retroactive application. When Johnson filed his motion for postconviction relief, over nine years had elapsed from the date of his trial. The motion was filed more than fifteen months after January 1, 1987. His claims do not fall within the two exceptions prescribed by the rule. Hence, the trial court properly denied Johnson's motion as untimely filed. We affirm the order of denial and vacate the stay of execution.
Id. at 1011 (emphasis added). We should apply the rule as written and dismiss this habeas petition.
Petitioner contends that in many cases other than Johnson, this Court has ignored the plain language of the rule. I agree that has been done. However, we have never said that the rule as written does not apply; rather, in the cases which violate the rule and proceed to a determination of the postconviction claim on another basis, the rule has simply been ignored. I do not believe that we should continue to do this.
Finally, I do not believe that application of our rule as written would violate any provisions of the United States Constitution. In 1996, a similar provision was adopted by Congress to apply to federal habeas petitions. 28 U.S.C. § 2244(b)(2) (2000) provides:
(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless 
(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously available.
See Tyler v. Cain, 533 U.S. 656, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001); Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).
CANTERO and BELL, JJ., concur.
ANSTEAD, J., concurring specially.
I concur fully in the majority opinion in this case, including the Court's rejection of any procedural barrier to Chandler's petition for a writ of habeas corpus seeking relief under a retroactive application of the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
Our determination that Crawford is not retroactive under the test we established in Witt v. State, 387 So.2d 922 (Fla.1980), resolves that issue in Florida and serves as precedent that our trial courts can now *735 rely upon in addressing similar claims in postconviction proceedings, yielding greater certainty and predictability in the law. In contrast, the imposition of an unreasonable and impractical procedural bar would result in an undefined and potentially endless delay in determining Crawford's retroactivity. Further, the imposition of a procedural bar also would be (1) violative of Florida's constitutional protection of the Great Writ and Access to the Courts; (2) violative of the spirit and letter of our postconviction rules; and (3) contrary to this Court's actual practice and case law on resolution of such issues by habeas corpus.
Initially, it is apparent that habeas is the more efficient, if not the exclusive, mechanism for resolving retroactivity claims, especially in death penalty cases, given this Court's exclusive jurisdiction in such cases and its exclusive authority to determine whether its decisions are retroactive under Witt. If, indeed, we intend that postconviction motions be filed and processed in the trial courts only after an important constitutional decision has been held to be retroactive, how else would retroactivity be determined than by an appropriate extraordinary writ petition in this Court asserting retroactivity under our Witt test? In fact, we recently went through such an analysis in a postconviction review and habeas proceeding in Johnson v. State, 904 So.2d 400 (Fla.2005), wherein we determined that the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), should not be retroactively applied. Cf. Tascano v. State, 393 So.2d 540, 541 (Fla.1980) (determining in certiorari proceedings that rule change requiring jury instruction on minimum and maximum authorized sentences upon request would be prospective only); Benyard v. Wainwright, 322 So.2d 473, 474 (Fla.1975) (determining in mandamus proceedings that decisions prohibiting deferral of effective date for parole revocation and requiring first sentence imposed to be served first would be applied retroactively).

RIGHT TO HABEAS CORPUS AND ACCESS TO THE COURTS
Article I, section 13, of the Florida Constitution provides:
The writ of habeas corpus shall be grantable of right, freely and without cost. It shall be returnable without delay, and shall never be suspended unless, in case of rebellion or invasion, suspension is essential to the public safety.
The right to habeas corpus is a "basic guarantee of Florida law," Haag v. State, 591 So.2d 614, 616 (Fla.1992), and the writ may be issued by this Court, a district court, or a circuit court. See art. V, §§ 3(b)(9), 4(b)(3), 5(b), Fla. Const. This Court has explained that
both simplicity and fairness are equally promoted by the right to habeas corpus relief that emanates from the Florida Constitution and has been partially embodied within Rule 3.850. Art. I, § 13, Fla. Const.; [State v.] Bolyea, 520 So.2d [562] at 563 [Fla. 1988]. The fundamental guarantees enumerated in Florida's Declaration of Rights should be available to all through simple and direct means, without needless complication or impediment, and should be fairly administered in favor of justice and not bound by technicality.
Haag, 591 So.2d at 616. Although the right, "like any other constitutional right, is subject to certain reasonable limitations consistent with the full and fair exercise of the right," the limitations must not be "applied harshly or contrary to fundamental *736 principles of fairness." Id.[3]
We have always been willing to entertain constitutional issues raised via application for a writ of habeas corpus, access to which is guaranteed by the Florida Constitution, especially in a death penalty context where our obligation for review is heightened. In fact, over the last several years we have reviewed dozens of habeas petitions filed in this Court asserting rights under a retroactive application of the decisions in Ring and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
Further, article I, section 21 of the Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial, or delay." This Court has a responsibility under this provision to ensure every citizen's access to the courts. See Lussy v. Fourth Dist. Court of Appeal, 828 So.2d 1026 (2002). To establish an unconstitutional denial of access to courts, an individual does not have to show that a statute or rule "produces a procedural hurdle which is absolutely impossible to surmount, only one which is significantly difficult." Mitchell v. Moore, 786 So.2d 521, 527 (Fla.2001).
In the case at hand the petitioner asserts that his conviction and imprisonment are unlawful because they are based upon the admission of evidence that the United States Supreme Court has held is violative of the United States Constitution. In order to resolve this claim the retroactivity of the Supreme Court's decision must be determined. Our rules provide that the petitioner cannot assert his claim in the trial court until retroactivity is determined. Essentially, by holding that habeas is also unavailable to resolve this issue, we would be saying that the petitioner has no place to go to have his contention resolved. Presumably, under that scenario, he could be executed and never have his claim resolved. Of course, in Witt and countless other cases we have recognized such a scenario does not make sense, and we have made habeas available to resolve such important constitutional issues. In this way we have avoided a direct confrontation with the constitutional provisions discussed above.

POSTCONVICTION RULES
Our postconviction rules, of course, are merely procedural devices adopted to facilitate and simplify the effective and efficient processing of claims cognizable under the Great Writ. We have never invoked the provisions of those rules to avoid resolution of constitutional issues such as the retroactive application of constitutional decisions emanating from this Court or the United States Supreme Court. A construction of our postconviction rules that would preclude the claim would not only raise serious constitutional concerns, but would also be directly contrary to our intent in adopting these rules, which was to channel appropriate claims to the trial *737 court once retroactivity is established rather than to impede an initial determination of retroactivity.
As we noted in a recent decision, this Court adopted our first postconviction rule in response to the "impending postconviction crisis" wrought by Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which the United States Supreme Court determined in a habeas corpus proceeding that indigent defendants were entitled to counsel provided by the State in state criminal proceedings. Baker v. State, 878 So.2d 1236, 1239 (Fla. 2004). Gideon itself, of course, was a postconviction claim set out in a petition for writ of habeas corpus. The Supreme Court's recognition of the right to counsel in postconviction habeas proceedings obviously indicated the ruling on the entitlement to counsel applied retroactively to similar postconviction claims. And, in fact, the Supreme Court subsequently applied Gideon in ten other collateral proceedings. See Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963).
Subsequently, in anticipation of a flood of habeas petitions seeking relief under Gideon even though neither this Court nor the United States Supreme Court had explicitly held it was to be applied retroactively, this Court promulgated the first postconviction rule of criminal procedure, rule 1. See Baker, 878 So.2d at 1239. Habeas petitions, of course, are traditionally filed in the geographic location where it is alleged that a person is being illegally detained. However, in order to prevent a flood of habeas petitions invoking Gideon from overwhelming the limited judicial resources available in the geographic region where most prisoners were located, this Court chose a more viable and efficient scheme by requiring the filings to be in the original courts of conviction throughout Florida. As we stated in Baker, the rule
was intended to provide a procedural mechanism for raising those collateral postconviction challenges to the legality of criminal judgments that were traditionally cognizable in petitions for writs of habeas corpus. Thus, this rule essentially transferred consideration of these traditional habeas claims from the court having territorial jurisdiction over the prison where the prisoner is detained to the jurisdiction of the sentencing court.
Id. (footnote omitted). Since our adoption of rule 1 and its successor, rule 3.850, we have recognized that our postconviction rules are merely "a procedural vehicle for the collateral remedy otherwise available by writ of habeas corpus." State v. Bolyea, 520 So.2d 562, 563 (Fla.1988); see also Amendment to Fla. Rules of Criminal Procedure Creating Rule 3.853, 807 So.2d 633, 636 (Fla.2001) (Anstead, J., concurring in part and dissenting in part) (noting that rule 3.850 and other rules "were enacted to simplify and facilitate the fair and orderly processing of habeas corpus claims by any defendant").
Originally, our postconviction rule had no time limit and no restriction on petitions seeking relief under a retroactive application of new precedent. However, in 1984, this Court adopted a provision requiring that most collateral challenges be filed within two years after the conviction becomes final. See Fla. Bar re Amendment to Rules of Criminal Procedure (Rule 3.850), 460 So.2d 907, 907 (Fla.1984). Further, we imposed a requirement that motions filed outside this time limit must assert that the fundamental constitutional right at issue was not established within the period provided in the rule and "has been held to apply retrospectively." Id.
While this Court did not specifically explain its reasoning for the latter requirement, its purpose can be extrapolated from our opinions holding "that only this Court *738 and the United States Supreme Court can adopt a change of law sufficient to precipitate a postconviction challenge to a final conviction," Witt, 387 So.2d at 930, and that this Court has the sole power to determine whether its decision should apply retroactively to decisions that are final. See Tascano v. State, 393 So.2d 540, 541 (Fla.1980); Benyard v. Wainwright, 322 So.2d 473, 474 (Fla.1975). Thus, it may have been anticipated that either this Court would announce at the time of a decision constituting a major change in constitutional law, or would announce shortly thereafter in another habeas proceeding, whether the decision was retroactive. See Williams v. State, 406 So.2d 1246, 1247 (Fla. 1st DCA 1981) ("Ideally, the retroactive effect of a decision changing constitutional doctrine is announced in the same decision. This is particularly important since the comment in Benyard... that the Florida Supreme Court has the sole power to determine the retroactive effect of its decisions."), approved, 421 So.2d 512 (Fla.1982).
On occasion, this Court has announced or signaled at the time of a decision that it has prospective effect only. See, e.g., Delgado v. State, 776 So.2d 233, 241 (Fla.2000) (holding that decision ruling that crime by guest or invitee does not constitute burglary would not apply retroactively to final convictions); Coney v. State, 653 So.2d 1009, 1013 (Fla.1995) (holding that rule requiring defendant's presence at bench during jury challenges "is prospective only"); Koon v. Dugger, 619 So.2d 246, 250 (Fla.1993) (establishing "prospective rule" governing procedures when capital defendant refuses to permit presentation of mitigating evidence in the penalty phase); Fenelon v. State, 594 So.2d 292, 295 (Fla.1992) (banning jury instruction on defendant's flight "in future cases"). There have even been a few instances when the Court has announced at the time of a decision that it has retroactive application. See, e.g., Mitchell v. Moore, 786 So.2d 521, 528 (Fla.2001) (giving retrospective application to decision holding copy requirement of Prisoner Indigency Statute unconstitutional). However, many times retroactivity is decided by implication rather than explicitly, as was the case in Gideon, where relief was granted in a postconviction habeas proceeding, obviously indicating its application to others similarly situated, or by a subsequent decision directly confronting the retroactivity issue. See Johnson, 904 So.2d at 412.

PRESERVATION OF HABEAS CORPUS
Whatever our intent behind the adoption of rule 3.850(b)(2) or other procedural regulations, we have always made clear that any restriction on habeas relief, including petitions seeking retroactive application of decisions establishing a fundamental constitutional right, could never be absolute. Although rule 3.850(b) provides that "[n]o other motion shall be filed or considered pursuant to this rule" if it is untimely, subdivision (h) reflects our recognition that no codification could possibly encompass every situation in which the writ of habeas corpus would be available:
Habeas Corpus. An application for writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court that sentenced the applicant or that the court has denied the applicant relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of the applicant's detention.

Fla. R.Crim. P. 3.850(h) (emphasis supplied). Hence, our own postconviction *739 rules recognize the need for flexibility in applying procedural bars.
Over the years, and acting pursuant to the fundamental and constitutional nature of habeas corpus as well as the "safety valve" of rule 3.850(h), this Court has frequently entertained habeas petitions seeking to resolve important constitutional issues, especially in capital cases where only this Court has jurisdiction to grant the relief requested. See State v. Fourth District Court of Appeal, 697 So.2d 70, 71 (Fla.1997) (noting our "exclusive jurisdiction to review all types of collateral proceedings in death penalty cases"). The most common of these have proven to be claims of ineffective assistance of counsel during direct appeals to this Court. See Knight v. State, 394 So.2d 997, 999 (Fla. 1981) ("The ineffective assistance of counsel allegations stem from acts or omissions before this Court, and therefore we have jurisdiction and will consider the petition for habeas corpus on its merits."). However, even a cursory review of our case law reflects that this Court has entertained successive habeas corpus petitions brought by capital defendants raising a variety of issues, including challenging (a) the erroneous standard of review applied by this Court in prior rule 3.850 appeals, see Johnston v. Moore, 789 So.2d 262 (Fla.2001) (concluding that Stephens v. State, 748 So.2d 1028 (Fla.1999), was not retroactive under Witt v. State, 387 So.2d 922 (Fla. 1980)); (b) the constitutionality of an inmate's stay on death row and of the clemency process, see King v. State, 808 So.2d 1237, 1246 (Fla.2002); (c) the propriety of various death sentences following Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), see Johnson v. Dugger, 520 So.2d 565 (Fla.1988) (treating all-writs petition based on Hitchcock error as a petition for writ of habeas corpus); and (d) the validity of a direct appeal decision affirming the override of a jury's recommendation of life in light of a new decision from this Court in another case, see Mills v. Moore, 786 So.2d 532 (Fla. 2001) (addressing merits of whether Keen v. State, 775 So.2d 263 (Fla.2000), required reconsideration of Court's direct appeal affirmance of override).
Notably, in none of these settings was there a dispute as to whether a successive petition for a writ of habeas corpus was a proper vehicle for raising these issues. Just recently, for example, and after entertaining successive habeas petitions claiming relief under a retroactive application of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), on the merits for several years, this Court held that Ring is not retroactive under the Witt test. See Johnson, 904 So.2d at 412.
It is worth noting that had rule 3.850(b) been construed to preclude claims such as Chandler's, it appears that numerous decisions of this Court making fundamental constitutional law changes retroactive in capital cases would not have been issued. See James v. State, 615 So.2d 668, 669 (Fla.1993) (holding that the U.S. Supreme Court's decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), issued during pendency of successive postconviction appeal, should be retroactively applied); Jackson v. Dugger, 547 So.2d 1197, 1198 (Fla.1989) (holding, on successive habeas petition, that Booth v. Maryland, 482 U.S. 496, 502-03, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), applied retroactively); Thompson v. Dugger, 515 So.2d 173, 175 (Fla.1987) (concluding, in appeal from denial of successive 3.850 motion, that Hitchcock v. Dugger, 481 U.S. 393, 398-99, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987), should be applied collaterally); Tafero v. State, 459 So.2d 1034, 1035 (Fla. 1984) (determining on appeal from rule 3.850 denial that Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 *740 (1982), barring death penalty for some felony murderers is "such a change in the law as to be cognizable in postconviction proceedings").
Of course, it is possible that in each of these instances, retroactivity would eventually have been established in a timely rule 3.850 petition, but this is far from certain, especially if the current one-year deadline for filing a postconviction claim in a capital case were also in effect. Application of rule 3.851(d)(2)(B) to preclude successive habeas petitions seeking retroactive application of a new decision by this Court or the United States Supreme Court would be particularly irrational and harsh in combination with the extraordinary procedural restrictions already in place. Ironically, death-sentenced individuals have only one year, rather than the two years for those who receive lesser sentences, in which to file their postconviction motions. Compare Fla. R.Crim. P. 3.850(b) with Fla. R.Crim. P. 3.851(d)(1). Clearly, a rigid application of rule 3.851(d)(2)(B) to severely limit retroactivity claims in successive habeas petitions would not serve the interests of justice.
While most of the cases discussed above arose under rule 3.850 rather than rule 3.851, no one, including the State, has ever contended that the constitutional right to habeas corpus available to all prisoners under subdivision (h) of rule 3.850 could be denied to death-sentenced individuals whose claims were filed after the 2000 adoption of the retroactivity limitation in what is now rule 3.851(d)(2)(B). See Amends. to Fla. Rules of Crim. Proc. 3.851, 3.852 & 3.993, 772 So.2d 488, 495 (Fla.2000). Stated another way, no one has asserted that courts could constitutionally permit habeas filings to all prisoners invoking claims under decisions like Crawford, but deny the same opportunity to seek the writ to those sentenced to death and presenting the exact same Crawford claims. In addition to the obvious equal protection problem, the United States Supreme Court has held "that the qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny." California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). Precluding a claim such as Chandler's would result in lesser, not greater, scrutiny in capital cases, unless we are to turn our constitutional law upside down and provide the greater degree of scrutiny to the lesser cases.

CONCLUSION
Although our postconviction rules were "intended to provide a complete and efficacious postconviction remedy to correct convictions on any grounds which subject them to collateral attack," Roy v. Wainwright, 151 So.2d 825, 828 (Fla.1963), we have never held that rule 3.850  or any procedural rule  can exhaust the circumstances in which the writ of habeas corpus as guaranteed in article I, section 13 would be available to test the legality of an individual's conviction or sentence. Indeed, we could never do so constitutionally or practically since only human experience itself can provide the endless possibility of circumstances that may provide a proper basis for the invocation of the writ to protect a fundamental right or correct a fundamental injustice.
PARIENTE, C.J., concurs.
NOTES
[1] As stated in rule 3.851(d)(1)(A) and (B), a judgment is final:

(A) on the expiration of time permitted to file in the United States Supreme Court a petition for writ of certiorari seeking review of the Supreme Court of Florida decision affirming a judgment and sentence of death (90 days after the opinion becomes final); or
(B) on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.
[2] As the Court stated in Witt:

[B]oth the frequency of Florida "law changes" involving our relatively new capital punishment statute and the unavoidable delay in deciding these cases suggest that finality will be illusory if each defendant is allowed to relitigate his first trial upon a subsequent change of law.
387 So.2d at 926 (footnotes omitted).
[3] In contrast to our constitutional guarantee that the writ shall be "grantable of right, freely and without cost," the United States Constitution mentions habeas corpus only in placing conditions upon its suspension: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2. Thus, the United States Supreme Court has "long recognized that `the power to award the writ by any of the courts of the United States, must be given by written law,' and [has] likewise recognized that judgment about the proper scope of the writ are `normally for Congress to make.'" Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (quoting Ex parte Bollman, 8 U.S. (4 Cranch) 75, 94, 2 L.Ed. 554 (1807), and Lonchar v. Thomas, 517 U.S. 314, 323, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)).