SALTER, J.
Gabriel A. Hernandez appeals a circuit court order denying his motion to vacate his plea, judgment and sentence under Florida Rule of Criminal Procedure 3.850. The motion was filed approximately three months after the Supreme Court of the United States issued its opinion in Padilla v. Kentucky, — U.S. -, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The issues on appeal are (1) whether the fact that the trial court delivers Florida’s deportation warning in a defendant’s plea colloquy, Florida Rule of Criminal Procedure 3.172(c)(8), bars postconviction ineffective assistance claims based on Padilla, and (2) if not, whether that determination applies retroactively to pleas taken before Padilla was announced.
We conclude that Padilla rendered Florida’s existing standard deportation warning constitutionally deficient in cases such as this. We further conclude, however, that Padilla should not be applied retroactively in Florida postconviction proceedings. Accordingly, we affirm the circuit court order denying Hernandez’s motion. We acknowledge that our rulings on these issues have significant implications — particularly within this District of this State — for pleas taken in the past and to be taken in the future by persons whose right to remain in the United States is subject to summary divestment solely because of such a plea.[1] For that reason, we certify to the Florida Supreme Court the following questions of great public importance pursuant to Florida Rule of Appellate Procedure 9.030(2)(A)(v):
1. DOES THE IMMIGRATION WARNING IN FLORIDA RULE OF CRIMINAL PROCEDURE 3.172(c)(8) BAR IMMIGRATION-BASED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS BASED ON THE U.S. SUPREME COURT’S DECISION IN PADILLA v. KENTUCKY, — U.S. -, *1146 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010)?
2. IF THE PRECEDING QUESTION IS ANSWERED IN THE NEGATIVE, SHOULD THE RULING IN PADILLA BE APPLIED RETROACTIVELY?
Because our conclusion on the first of these two issues expressly and directly conflicts with the decision of the Fourth District in Flores v. State, 57 So.3d 218 (Fla. 4th DCA 2010),[2] on the same question of law, we also certify the conflict to the Florida Supreme Court under Florida Rule of Appellate Procedure 9.030(2)(A)(iv).
I. Background
In April 2001, Hernandez (then 19 years old and a permanent resident alien cardholder) was arrested for the sale of lysergic acid diethylamide (LSD) to a confidential informant.[3] Hernandez was born in Nicaragua, but entered the United States with his mother when he was under two years of age. On May 3, 2001, Hernandez was charged by information with a violation of section 893.13(l)(a)l, Florida Statutes (2001), sale of a controlled substance, a second degree felony. The same day, an Assistant Public Defender was appointed to represent him, he was arraigned, and he entered a plea of guilty to the charge. From appointment of counsel to entry of the plea, about ten minutes elapsed. The plea was for one year of probation (with a possibility of termination after six months), completion of a substance abuse assessment and any recommended treatment, and the payment of $451.00 in costs. The maximum sentence of fifteen years in state prison was described to Hernandez by his attorney before he agreed to the plea.
The plea colloquy included Hernandez’s affirmative response (in the presence of his appointed counsel) to the trial court’s question: “Do you understand that if you are not an American citizen, the U.S. Government could use these charges against you in deportation proceedings?” Hernandez also acknowledged as part of the colloquy that he was able to speak, read, and write English. As part of his motion and as a proffer of his (now former) Assistant Public Defender’s recollection of the immigration-related aspects of Hernandez’s plea, Hernandez attached emails regarding the former Assistant’s responses to a series of questions. The former Assistant acknowledged that he had no specific recollection of the case, as he had handled “thousands” of them while a Public Defender, but he reported that he confined his immigration-related advice to his clients to the fact “that a plea could/may affect their immigration status.” He did say that he “definitely did not discuss the immigration consequences with any outside immigration counsel and did not refer Hernandez to an immigration specialist.”
Evidence also was proffered to show that after this incident Hernandez had gone on to attain a number of achievements — a Bachelor of Arts Degree in 2005, and gainful employment as a computer network administrator for a Miami bank group. But unbeknownst to Hernandez in 2001, and apparently to his Assistant Public Defender as well, his plea and conviction was and is classified as an “aggravated felony” under the Immigration and Nationality Act, 8 U.S.C. *1147 § 1101(a)(48)(B), mandating his deportation under 8 U.S.C. § 1227(a)(2)(A)(iii), and (B)(i). The plea and conviction also bar Hernandez’s eligibility for discretionary relief from deportability under 8 U.S.C. §§ 1182(h) or 1229b(a)(3). In his sworn motion, Hernandez alleged that he would not have entered a plea of guilty if he had known that it “would mandate [his] deportation without recourse.”
II. Analysis Regarding Padilla
In considering Hernandez’s motion, the trial court was not free to ignore our neighboring appellate court’s application of Padilla in Flares. The trial court’s careful and detailed four-page order denying Hernandez’s claim was correct on the basis of binding Florida decisional law as it stood five months after Padilla was announced.We are not bound by Flores, however, and we have also received the benefit of other reported decisions by several federal and state courts.
A. Flores v. State
Flores distinguishes Padilla on a critical point: “Padilla was not advised by the trial court during the plea colloquy that the plea might result in deportation.” Flores, 57 So.3d at 220. The Kentucky trial court did not warn Padilla as a Florida court would have under our Rule 3.172(c)(8). In Flores’ case, an evidentiary hearing had already been conducted, and it was established that his plea colloquy had included language consistent with Rule 3.172(c)(8), notifying him “that the conviction may result in deportation.” Id. The Fourth District held that this warning precluded Flores from showing “the prejudice necessary to obtain relief for ineffective assistance of counsel under [Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ].” Id. The opinion accurately observes that “[a] defendant’s sworn answers during a plea colloquy must mean something,” and “a defendant has an affirmative duty to speak up if the attorney has promised something different.” Id.
Relying on this Court’s decision in Bermudez v. State, 603 So.2d 657, 658 (Fla. 3d DCA 1992), Flores holds that the trial court’s warning to Flores that he may be deported based on his plea “cured any prejudice that might have flowed from counsel’s alleged misadvice.” 57 So.3d at 220-21. While this may have been an accurate statement of federal and Florida law before Padilla, we respectfully conclude that it is no longer accurate.
As noted, the record in Padilla did not even include a “may subject you” warning as part of the plea colloquy. But the holding in that case does not depend on a distinction between defense counsel’s mere failure to warn versus his or her affirmative misadvice.[4] Instead, Padilla goes to the very heart of a defendant’s Sixth Amendment right to effective assistance of counsel when the defendant is entering a plea to a criminal charge as to which the plea and sentence, as here, will subject the defendant to deportation (and with no basis to apply for discretionary relief from that result). The majority opinion in Padilla focuses on counsel’s duty, not on the “fair notice” warning that such a plea might (and therefore, inferentially, might not) result in deportation:
There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward (as it is in many of the scenarios posted by Justice *1148 Alito), a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally dear.
Padilla, 130 S.Ct. at 1483 (footnote omitted; emphasis provided).
The majority opinion thus differentiated between those cases involving a mere “risk of adverse immigration consequences,” and those with a “truly clear” deportation consequence. The concurring opinion by Justice Alito in Padilla, joined by Chief Justice Roberts, recognized the consequence of such a distinction in the many cases in which deportability is clear but only the “risk of adverse immigration consequences” warning is given. The concurring opinion argued that defense counsel must only “(1) refrain from unreasonably providing incorrect advice and (2) advise the defendant that a criminal conviction may have adverse immigration consequences and that, if the alien wants advice on this issue, the alien should consult an immigration attorney.” Id. at 1484.
We are obligated to follow and apply the majority’s distinction and holding in Padilla. Applying this new Sixth Amendment analysis to the present case, neither the plea colloquy nor Hernandez’s counsel’s advice (accepting the sworn allegation of Hernandez’s motion as true for this purpose) conveyed the warning that deporta-bility was a non-discretionary and “truly clear” consequence of his plea.
The Supreme Court also explained in Padilla why this seemingly simple distinction between a “will subject you” warning versus a “may subject you” warning has a constitutional dimension:
We too have previously recognized that “ ‘[preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence.’ ” [INS v.] St. Cyr, 533 U.S. [289,] 323, 121 S.Ct. 2271, 150 L.Ed.2d 347 [ (2001) ] (quoting 3 Criminal Defense Techniques §§ 60A.01, 60A.02[2] (1999)). Likewise, we have recognized that “preserving the possibility of’ discretionary relief from deportation under § 212(c) of the 1952 INA, 66 Stat. 187, repealed by Congress in 1996, “would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.” St. Cyr, 533 U.S. at 323, 121 S.Ct. 2271, 150 L.Ed.2d 347.
Padilla, 130 S.Ct. at 1483.
In Flores, the Fourth District further noted that Padilla’s plea resulted in a conviction for an “aggravated felony” under 8 U.S.C. § 1227(a)(2)(A)(iii), while Flores’ conviction did not. The opinion reported, however, that Flores nonetheless became deportable under 8 U.S.C. § 1227(a)(2)(B).[5] Under our reading of Padilla, constitutionally effective defense counsel is required under either scenario to furnish a “will subject you,” not a “may subject you” warning to his or her client.
B. Other Decisions Applying Padilla
Other reported opinions have split on both the applicability of Padilla (in cases involving mandatory deportation and a “may subject you to a risk of deportation” warning in the plea colloquy) and whether its holding should be applied retroactively.
People v. Garcia, 29 Misc.3d 756, 907 N.Y.S.2d 398 (N.Y.Sup.Ct.2010), includes a detailed analysis of pre-Padilla case law in New York, the Sixth Amendment implications of the decision, and the retroactivity *1149 question. On a plea, conviction, and immigration colloquy similar to those involving Hernandez, the New York Supreme Court found ineffective assistance under Padilla, applied that holding retroactively, and thus vacated the defendant’s pre-Padilla plea.
In State v. Limarco, 235 P.3d 1267 (Kan.Ct.App.2010), the Court of Appeals of Kansas considered the effect of Padilla on Limarco’s motion to vacate a 2005 D.U.I. charge.[6] The Court of Appeals reversed a trial court order denying Limarco’s motion and remanded the case for an evidentiary hearing regarding the alleged prejudice.
In Boakye v. United States, No. 09 Civ. 8217, 2010 WL 1645055 (S.D.N.Y. Apr.22, 2010), the United States District Court for the Southern District of New York considered a motion to vacate a 2005 plea and conviction for participation in a conspiracy to distribute heroin, a “presumptively mandatory” basis for deportation. During the plea colloquy, Boakye received a warning that “another possible consequence of your plea here is that you might be deported.” [7] The U.S. District Court determined that, if Boakye’s allegation as to his counsel’s failure to advise is taken as true, that advice “would amount to unreasonable advice under Padilla.”[8] Based on other contemporaneous evidence regarding the 2005 plea, however, the court concluded that Boakye’s motion failed to satisfy Strickland and denied the motion without an evidentiary hearing.
These three decisions from courts outside Florida are consistent with our analysis of Padilla as regards the constitutional deficiency of a “may” warning in a plea colloquy with a noncitizen when automatic deportability is a “truly clear,” non-discretionary consequence.
III. Analysis Regarding Retroactivity
Neither Padilla itself, nor Limarco, nor Boakye specifically addressed the question of retroactive application. As noted, the New York court did so in People v. Garcia, assessing that question under the federal standards articulated in Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989),[9] and citing numerous early decisions on both sides of the issue.
Our analysis of the issue begins with Padilla itself, which implies (but does not explicitly hold) that it is to be applied retroactively. The majority opinion in Padilla forcefully rejects the “floodgates” concern inherent in retroactive application. The Solicitor General argued “the importance of protecting the finality of convictions obtained through guilty pleas.” Padilla, 130 S.Ct. at 1484. The majority then explained that no such onslaught of postconviction claims had succeeded when Strickland was interpreted in Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Id. These passages strongly suggest that the majority fully understood that Padilla would be followed *1150 by motions to vacate preexisting pleas and convictions.
“To determine whether a new rule applies retroactively to final cases in postcon-viction proceedings, however, courts in Florida conduct a retroactivity analysis under Witt v. State, 387 So.2d 922 (Fla.1980).” State v. Fleming, 61 So.3d 399 (Fla.2011). Applying Witt to the case at hand, the new rule in Padilla is evaluated to determine whether it “(a) emanates from [the Supreme Court of Florida] or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.” Witt, 387 So.2d at 931. The first two of these three elements have been satisfied. The third element, “fundamental significance,” has been explained in several cases after Witt.
In Chandler v. Crosby, 916 So.2d 728 (Fla.2005), the Supreme Court of Florida identified three factors that are to be assessed in considering a federal constitutional development that is procedural rather than substantive in character:[10] “ ‘(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of a retroactive application of the new rule.’ ” Chandler, at 730 (quoting Witt, 387 So.2d at 926). We address these in order.
A. Purpose To Be Served
The decision in Padilla is plainly intended to assure that noncitizen defendants considering a plea receive effective assistance of counsel regarding the immigration consequences of the plea. Padilla, as in prior analyses regarding United States Supreme Court decisions in Apprendi,[11] Blakely,[12] Crawford,[13] and Ring,[14] “does not affect the determination of guilt or innocence” and “does not address a miscarriage of justice or effect a judicial upheaval” regarding substantive criminal law. Hughes v. State, 901 So.2d 837, 841-42 (Fla.2005). As in those prior decisions, retroactive application of Padilla does not further the critical purposes of protecting “the veracity or integrity” of the underlying criminal case and preventing the conviction of the innocent. Id. at 844. Rather, Padilla “announced an emerging right of procedural fairness that does not compel the disruption of final judgments.” Id. (citing Witt, 387 So.2d at 929).
B. Extent of Reliance on the Old Rule
Trial and appellate courts in Florida have relied heavily on the pre-Padilla immigration consequences warning as codified in Rule 3.172(c)(8). The “subject to deportation” warning in that rule has been *1151 effective for over 22 years[15] and has been relied upon in postconviction cases and appeals during that period. Such a “considerable period of reliance” militates against retroactive application of the new standard articulated in Padilla. Hughes, 901 So.2d at 845.
C. Effect of Retroactive ApjSlication
As the State argues, retroactive application of the rule in Padilla would be far-reaching and adverse to the administration of justice. The insufficiency of the previously-sufficient deportation warning during thousands of past plea colloquies for noncitizens would pave the way for motions to vacate those pleas and convictions. Evidentiary hearings would follow. The concern expressed in another immigration warning case, that for any such case in which a plea is set aside, “the passage of time between the guilty plea and the post-conviction motion puts the State at a great disadvantage in seeking to try the case to conviction,” State v. Green, 944 So.2d 208, 216 (Fla.2006), applies with equal force here.
Each of the three Witt factors cuts against retroactive application. We thus conclude that Padilla does not apply to Florida defendants whose convictions already were final as of March 31, 2010, when that case was decided.
IV. Conclusion
In Padilla, the Supreme Court of the United States concluded that the Sixth Amendment’s guarantee of effective assistance of counsel requires unequivocal advice to a noncitizen defendant considering a plea to almost all drug offenses (including the one involved here) that a guilty plea and conviction will make the defendant subject to automatic deportation. This is a significant change in this body of law, and in criminal practice, because criminal defense counsel ordinarily are not trained, experienced immigration law practitioners. Until Padilla was announced, it was understood in Florida that the specific, but equivocal, language in Rule 3.172(c)(8) was sufficient to survive post-conviction challenge — including claims of ineffective assistance of counsel. The Supreme Court of Florida had previously reconciled the competing interests of the trial courts (establishing bright-line rules) and the interests of defendants in timely raising these issues, by promulgating Rule 3.172(c)(8) and by deciding a line of cases culminating (and chronicled in) State v. Green, 944 So.2d 208 (Fla.2006).
But this orderly landscape has been repainted. It is now the law in this and every other state that constitutionally competent counsel must advise a noncitizen/de-fendant that certain pleas and judgments will, not “may,” subject the defendant to deportation. We must respectfully disagree with the existing panel decision of the Fourth District in Flores v. State, because in our view the ruling in Padilla does not turn on the fact that the Kentucky trial court and plea colloquy failed to include a “may subject you to deportation” type of warning. It turns on the fact that a “may” warning is deficient (and is actually misadvice) in a case in which the plea “will” subject the defendant to deportation. We anticipate that Rule 3.172(c)(8) will require an amendment to comport with the holding in Padilla.
We do not find, however, that Padilla is one of those rare federal constitutional decisions warranting retroactive application under Witt and the many cases that have followed it. As Hernandez’s convic *1152 tion was final over eight years before Padilla was decided, the trial court correctly denied Hernandez’s motion to vacate his plea.
The order denying Hernandez’s motion is affirmed; questions and conflict certified as detailed above.

. The far-reaching consequences of this case and other post -Padilla rulings have attracted interest from several academic and professional groups. We acknowledge the Immigration Clinics of the University of Miami and St. Thomas University Schools of Law, the American Immigration Lawyers Association (South Florida Chapter), the Florida Immigrant Advocacy Center, and the Florida Association of Criminal Defense Lawyers, for their participation in the case.

. Flores is pending in the Fourth District on the appellant's motion for rehearing en banc.

. The operative facts are as set forth in Hernandez's sworn motion filed in July 2010. They are supported by pertinent documents attached to the motion and are not disputed by the State for purposes of the issues presented here.

. Padilla, 130 S.Ct. at 1484.

. Flores, 57 So.3d at 219 and 220 n. 4.

. This opinion is "unpublished” for purposes of Kansas Supreme Court Rule 7.04(f) and is "not favored for citation” but "may be cited for persuasive authority on a material issue not addressed by a published Kansas appellate court opinion.” The analysis brought to Padilla by the Kansas Court of Appeals is one of the first state court decisions issued in the' aftermath of the U.S. Supreme Court’s decision.

. Boakye, 2010 WL 1645055, at *4-5.

. Id. at *5.

. In People v. Eastman, 85 N.Y.2d 265, 624 N.Y.S.2d 83, 648 N.E.2d 459 (1995), New York adopted the retroactivity analysis in Teague and its progeny. Garcia, 907 N.Y.S.2d at 403.

. Chandler considered whether the confrontation clause holding in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), should be applied retroactively. We conclude that Padilla is also procedural, affecting pleas and standards of competence for counsel rather than a substantive change regarding the regulation of conduct or the imposition of penalties for prohibited conduct.

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Florida rejected its retroactive application in Hughes v. State, 901 So.2d 837 (Fla.2005).

. Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). A conflict among the Florida district courts of appeal regarding retroactivity was resolved in State v. Fleming, 61 So.3d 399 (Fla. 2011), with a determination that Blakely will not be applied retroactively.

. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Retroactive application was rejected in Chandler v. Crosby, 916 So.2d 728 (Fla.2005).

. Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Retroactive application was rejected in Johnson v. State, 904 So.2d 400 (Fla.2005).

. In re: Amendments to Fla. Rules of Crim. P., 536 So.2d 992, 994 (Fla.1988). The addition of the warning to the plea colloquy by rule became effective January 1, 1989.