PER CURIAM.
This case is before the Court for review of the decision of the Third District Court of Appeal in Hernandez v. State, 61 So.3d 1144 (Fla. 3d DCA 2011). In its decision, the Third District ruled upon the following questions, which it certified to be of great public importance:
1. DOES THE IMMIGRATION WARNING IN FLORIDA RULE OF CRIMINAL PROCEDURE 3.172(c)(8) BAR IMMIGRATION-BASED INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS BASED ON THE U.S. SUPREME COURT’S DECISION IN PADILLA v. KENTUCKY [559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) ]?
2. IF THE PRECEDING QUESTION IS ANSWERED IN THE NEGATIVE, SHOULD THE RULING IN PADILLA BE APPLIED RETROACTIVELY?
Hernandez, 61 So.3d at 1145-46.
We answer the certified questions in the negative.[1] We hold that, under Padilla, the trial court’s warning to a defendant that “the plea may subject him or her to deportation,” as required by Florida Rule of Criminal Procedure 3.172(c)(8), does not preclude a finding of ineffective assistance of counsel. However, we also hold that the United States Supreme Court’s holding in Padilla does not apply retroactively. Therefore, we approve the Third District’s decision upholding the denial of Hernandez’s postconviction motion.
I. BACKGROUND
The facts in this case were set forth in the Third District’s decision below:
In April 2001, Hernandez (then 19 years old and a permanent resident alien cardholder) was arrested for the sale of lysergic acid diethylamide (LSD) to a confidential informant. Hernandez was born in Nicaragua, but entered the United States with his mother when he was under two years of age. On May 3, 2001, Hernandez was charged by information with a violation of section 893.13(l)(a)l, Florida Statutes (2001), sale of a controlled substance, a second degree felony. The same day, an Assistant Public Defender was appointed to represent him, he was arraigned, and he entered a plea of guilty to the charge. From appointment of counsel to entry of the plea, about ten minutes elapsed. The plea was for one year of probation (with a possibility of termination after six months), completion of a substance abuse assessment and any recommended treatment, and the payment of $451.00 in costs. The maximum sentence of fifteen years in state prison was described to Hernandez by his attorney before he agreed to the plea.
The plea colloquy included Hernandez’s affirmative response (in the presence of his appointed counsel) to the *760 trial court’s question: “Do you understand that if you are not an American citizen, the U.S. Government could use these charges against you in deportation proceedings?” Hernandez also acknowledged as part of the colloquy that he was able to speak, read, and write English. As part of his motion and- as a proffer of his (now former) Assistant Public Defender’s recollection of the immigration-related aspects of Hernandez’s plea, Hernandez attached emails regarding the former Assistant’s responses to a series of questions. The former Assistant acknowledged that he had no specific recollection of the case, as he had handled “thousands” of them while a Public Defender, but he reported that he confined his immigration-related advice to his clients to the fact “that a plea could/may affect their immigration status.” He did say that he “definitely did not discuss the immigration consequences with any outside immigration counsel and did not refer Hernandez to an immigration specialist.”
Evidence also was proffered to show that after this incident Hernandez had gone on to attain a number of achievements — a Bachelor of Arts Degree in 2005, and gainful employment as a computer network administrator for a Miami bank group. But unbeknownst to Hernandez in 2001, and apparently to his Assistant Public Defender as well, his plea and conviction was and is classified as an “aggravated felony” under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), mandating his deportation under 8 U.S.C. § 1227(a)(2)(A)(iii), and (B)(i). The plea and conviction also bar Hernandez’s eligibility for discretionary relief from deportability under 8 U.S.C. §§ 1182(h) or 1229b(a)(3).
Hernandez v. State, 61 So.3d at 1146-47 (footnote omitted).
On March 31, 2010 (nine years after Hernandez entered his plea), the United States Supreme Court in Padilla, 130 S.Ct. at 1478, held that defense counsel was deficient for failing to advise his client of mandatory deportation consequences for pleading guilty. Padilla, a long-time, permanent resident of the United States, pled guilty to drug-transportation charges' after receiving advice from defense counsel “that [Padilla] ‘did not have to worry about immigration status since he had been in the country so long.’ ” Id. at 1478 (quoting Commonwealth v. Padilla, 253 S.W.3d 482, 483 (Ky.2008)).[2] However, after discovering that the plea “made his deportation virtually mandatory” under the Immigration and Nationality Act, Padilla filed a postconviction motion alleging ineffective assistance of counsel. Id. at 1478. The Supreme Court noted that Padilla’s was “not a hard case in which to find deficiency: The consequences of Padilla’s plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel’s advice was incorrect.” Id. at 1483.
Although Padilla’s counsel had supplied incorrect advice, the United States Supreme Court specifically rejected the suggestion that it should limit its holding to cases that, like Padilla, involved affirmative misadvice.. Id. at 1484. Instead, it ruled that defense counsel must, at a minimum, “inform her client whether his plea carries a risk of deportation.” Id. at 1486. Furthermore, the United States Supreme Court specified that, depending on the clarity and certainty of the deportation consequence, defense counsel’s duty to advise under Padilla may be heightened:
*761 Immigration law can be complex, and it is a legal specialty of its ■ own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.
Id. at 1483 (footnote omitted).
Following the United States Supreme Court’s decision in Padilla, Hernandez filed a posteonviction motion alleging that his counsel failed to advise him that deportation was mandatory for the offense to which he pled nine years earlier and that he would not have pled guilty if he had known that it “would mandate [his] deportation without recourse.” Hernandez, 61 So.3d at 1147. The circuit court, relying on the Fourth District’s decision in Flores v. State, 57 So.3d 218 (Fla. 4th DCA 2010), summarily denied Hernandez’s motion on the basis that the immigration consequences warning included in the plea colloquy pursuant to rule 3.172(c)(8)[3] precluded Hernandez from establishing the requisite prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[4] .See id.
On appeal, the Third District affirmed the denial of Hernandez’s posteonviction motion on the separate basis that, in its view, Padilla does not apply retroactively. Id. at 1151. Additionally, the Third District expressed disagreement with the Fourth District’s reasoning in Flores that the warning given by the trial court precludes any finding of prejudice resulting from counsel’s deficiency. See id. at 1147. The Third District instead stated that, “[u]nder our reading of Padilla, constitutionally effective defense counsel is required ... to furnish a ‘will subject you,’ not a ‘may subject you’ warning to his or her client” where the deportation consequences of a plea are truly clear as a matter of law. Id. at 1148 (emphases add *762 ed). Finally, the Third District certified the questions described earlier concerning rule 8.172(c)(8) deportation warnings and the retroactivity of Padilla.
II. ANALYSIS
A.
The United State Supreme Court’s decision in Strickland, 466 U.S. at 687, 104 S.Ct. 2052, outlines two requirements for establishing an ineffective assistance of counsel claim:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
In the plea context, a defendant satisfies the prejudice requirement only where he can demonstrate “a reasonable probability that, but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). “[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.” Padilla, 130 S.Ct. at 1485 (citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000)).
In this case, assuming the truth of Hernandez’s allegations (as the United States Supreme Court assumed the truth of Padilla’s allegations), Hernandez’s counsel was deficient under Padilla for failing to advise Hernandez that his plea subjected him to presumptively mandatory deportation.[5] See Padilla, 130 S.Ct. at 1483. Hernandez, like Padilla, pled to a controlled substance offense, making him de-portable, 8 U.S.C. § 1227(a)(2)(B)(i), and an aggravated felon, 8 U.S.C. § 1101(a)(43)(B). See Hernandez, 61 So.3d at 1146-47. As the United States Supreme Court in Padilla, 130 S.Ct. at 1483, observed, these statutory terms “are succinct, clear, and explicit in defining the removal consequence for [a controlled substance] conviction.” Hernandez’s counsel, like “Padilla’s counsel[,] could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses.” Padilla, 130 S.Ct. at 1483. Yet Hernandez proffered evidence that defense counsel merely advised Hernandez “that a plea could/may affect [Hernandez’s] immigration status.” Hernandez, 61 So.3d at 1146. Given that the deportation consequence was “truly clear,” Hernandez’s counsel had a commensurate duty to provide the “correct advice.” Padilla, 130 S.Ct. at 1483.
Although defense counsel was deficient for failing to warn Hernandez of the clear immigration consequences of his *763 plea, the State contends that any resulting prejudice was cured. Specifically, the State argues that the deportation warning required by rule 3.172(c)(8) provides notice to a defendant of deportation consequences prior to entry of his plea, such that the defendant cannot later argue he was prejudiced by his counsel’s failure to warn. Hernandez responds that, given counsel’s heightened duty in certain “truly clear” circumstances, the “may subject you” warning in rule 3.172(c)(8) is insufficient to categorically remediate prejudice resulting from defense counsel’s deficiency. We agree with. Hernandez and hold that, under Padilla, the equivocal warning pursuant to rule 3.172(c)(8) does not bar ineffective assistance of counsel claims in every instance.
Here, it is undisputed that “[t]he plea colloquy included Hernandez’s affirmative response (in the presence of his appointed counsel) to the trial court’s question: ‘Do you understand that if you are not an American citizen, the U.S. Government could use these charges against you in deportation proceedings?”’ Hernandez, 61 So.3d at 1146. However, because Padilla requires from counsel more than this type of equivocal warning, the trial court’s warning could not have sufficiently removed the prejudice, if any, in this case. Where deportation consequences are “truly clear,” the United States Supreme Court in Padilla requires effective counsel to provide more than equivocal advice concerning those consequences. Padilla, 130 S.Ct. at 1483. At least in those circumstances, an equivocal warning from the trial court is less than what is required from counsel and therefore cannot, by itself, remove prejudice resulting from counsel’s deficiency.
The fact that an equivocal warning from the trial court is insufficient to categorically eliminate prejudice in every circumstance is not to say, however, that the plea colloquy is meaningless, as the Fourth District in Flores reasoned. See Flores, 57 So.3d at 220. Instead, a colloquy containing an equivocal warning from the trial court and an acknowledgment from the defendant contributes to the totality of the circumstances by providing evidence that the defendant is aware of the possibility that a plea could affect his immigration status. In other words, the colloquy required by rule 3.172(c)(8) may refute a defendant’s postconviction claim that he had no knowledge that a plea could have possible immigration consequences; however, it cannot by itself refute a claim that he was unaware of presumptively mandatory consequences.
B.
We agree with the Third District that Padilla does not apply retroactively. See Hernandez, 61 So.3d at 1151.[6]
Under Witt v. State, 387 So.2d 922 (Fla.1980), “a new rule of law will not apply retroactively unless the new rule ‘(a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance.’ ” Chandler v. Crosby, 916 So.2d 728, 729 (Fla.2005) (quoting Witt, 387 So.2d at 931). This Court has, applying Witt, “rarely f[ound] a change in decisional law to require retroactive application.” Hughes v. State, 901 So.2d 837, 846 (Fla.2005) (quot *764 ing Mitchell v. Moore, 786 So.2d 521, 529 (2001)). Because, in this case, Padilla clearly meets the first two requirements, the analysis turns on whether Padilla “constitutes a development of fundamental significance.” Witt, 387 So.2d at 931; see Johnson v. State, 904 So.2d 400, 409 (Fla.2005); Hughes, 901 So.2d at 840.
“[A] decision is of fundamental significance when it either places ‘beyond the authority of the state the power to regulate certain conduct or impose certain penalties’ or when the rule is ‘of sufficient magnitude to necessitate retroactive application[.]’ ” Chandler, 916 So.2d at 729 (quoting Witt, 387 So.2d at 929). Padilla, like other Sixth Amendment cases addressed by this Court under Witt, clearly “does not fall within the first category because it does not prohibit the government from criminalizing certain conduct or imposing certain penalties.” Johnson, 904 So.2d at 409. Therefore, this Court must determine whether the rule announced in Padilla is “of sufficient magnitude to necessitate retroactive application” after assessing three factors: “(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule.” Witt, 387 So.2d at 926, 929.
The first factor weighs against a finding that Padilla is retroactively applicable. Padilla’s purpose is to ensure “accurate legal advice for noncitizens accused of crimes,” and to bring “informed consideration of possible deportation” into the plea-bargaining process. Padilla, 130 S.Ct. at 1480, 1486. Yet Padilla focuses solely on the duty of defense counsel and, according to the United States Supreme Court, merely encapsulates existing professional norms within the established framework of the Sixth Amendment right to effective assistance of counsel. See Padilla, 130 S.Ct. at 1485. Padilla neither “alter[s] the range of conduct or class of persons that the law punishes,” Johnson, 904 So.2d at 409, nor “affect[s] the determination of guilt or innocence,” Hughes, 901 So.2d at 841. Additionally, in Florida, Padilla does not exist as the only mechanism by which a noncitizen is informed of potential immigration consequences to entering a plea. Although rule 3.172(c)(8) is unable to completely eliminate prejudice from counsel’s deficiency in every instance, the rule has, since its adoption in 1988, at least ensured that those convicted and ready to admit to commission of a crime receive some notification that deportation is possible. This Court has further provided to noncitizen defendants a mechanism for vacating their plea if the trial court does not advise the defendant correctly under rule 3.172(c)(8). See State v. Green, 944 So.2d 208 (Fla.2006). The fact that this warning has existed within the plea process effectively limits Padilla to its pronouncement of a heightened duty for defense counsel in certain situations.
Witt’s second factor also weighs against retroactive application of Padilla. This Court had, since 1987, effectively relieved attorneys of the constitutional responsibility to advise their clients of the potential consequence of deportation. See State v. Ginebra, 511 So.2d 960 (Fla.1987). Additionally, postconviction courts have relied on the old rule in addressing ineffective assistance of counsel claims. See Barrios-Cruz, 63 So.3d at 872-73; Hernandez, 61 So.3d at 1150-51. Moreover, our reliance on the old rule “has been entirely in good faith.” Johnson, 904 So.2d at 410. Prior to Padilla, the United States Supreme Court had not required defense counsel to advise clients concerning collateral matters, and at least nine United States Courts of Appeals and thirty states had affirmatively held that counsel was not *765 required to provide such advice. See Chaidez v. United States, 655 F.3d 684, 690-91 (7th Cir.2011).
Finally, Witt’s third factor weighs against retroactive application because retroactive application of Padilla would have an adverse impact on the administrative of justice. As the Third District in Hernandez observed,
[t]he insufficiency of the previously-sufficient deportation warning during thousands of past plea colloquies for nonciti-zens would pave the way for motions to vacate those pleas and convictions. Evi-dentiary hearings would follow. The concern expressed in another immigration warning case, that for any such case in which a plea is set aside, “the passage of time between the guilty plea and the postconviction motion puts the State at a great disadvantage in seeking to try the case to conviction,” State v. Green, 944 So.2d 208, 216 (Fla.2006), applies with equal force here.
Hernandez, 61 So.3d at 1151. Indeed, many of the cases could involve overturned convictions, stale records, lost evidence, and unavailable witnesses. Chandler, 916 So.2d at 730-31.
Accordingly, because all three Witt factors weigh against retroactive application, we hold that the rule announced in Padilla does not apply retroactively.
III. CONCLUSION
For the foregoing reasons, we hold that rule 3.172(c)(8) does not, in every instance, cure prejudice resulting from defense counsel’s failure to advise of deportation consequences as required by Padilla. However, we also hold that Padilla does not apply retroactively. We therefore answer both certified questions in the nega-five and approve of the Third District’s decision below.
It is so ordered.
POLSTON, C.J, and LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ„ concur.
PARIENTE, J., concurs with an opinion, in which QUINCE, J., concurs.

. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. And given that the certified questions involve legal determinations based on undisputed facts, we employ a de novo standard of review. See Coicou v. State, 39 So.3d 237, 240 (Fla.2010).

. Both the Kentucky Supreme Court and the United States Supreme Court assumed the truth of Padilla’s allegations. See Padilla, 130 S.Ct. at 1478, 1486-87.

. Florida Rule of Criminal Procedure 3.172(c)(8) requires that a trial court, before accepting a plea of guilty or nolo contendere, issue standard warnings to defendants to ensure the voluntariness of their plea:
(c) Determination of Voluntariness. Except when a defendant is not present for a plea ... the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
[[Image here]]
(8) that if he or she pleads guilty or nolo contendere, if he or she is not a United States citizen, the plea may subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service. It shall not be necessary for the trial judge to inquire as to whether the defendant is a United States citizen, as this admonition shall be given to all defendants in all cases....
Rule 3.172(c)(8) was identical in substance at the time Hernandez pled guilty, and it has remained substantively unaltered since it original adoption in 1988. See In re Amendments to Fla. R. Crim. P., 536 So.2d 992 (Fla.1988).

. The Fifth District has reached the same conclusion. See Santiago v. State, 65 So.3d 575, 576 (Fla. 5th DCA 2011) ("[T]he trial court's warning to Santiago that he may be deported as a result of his plea cured any prejudice that might have flowed from counsel’s misadvice (assuming any misadvice was given).”).

. Florida, like many other jurisdictions, once classified deportation consequences as “collateral” and held that defense counsel had no constitutional duty to advise defendants as to the potential deportation consequences to entering a plea. See State v. Ginebra, 511 So.2d 960, 962 (Fla.1987) ("We therefore hold that counsel’s failure to advise his client of the collateral consequence of deportation does not constitute ineffective assistance of counsel.”). In light of the United States Supreme Court's decision in Padilla, however, we recede from our holding in Ginebra.

. The Second, Fourth, and Fifth Districts have also held that Padilla should not be applied retroactively. See Rodriguez v. State, 75 So.3d 391 (Fla. 4th DCA 2011); State v. Shaikh, 65 So.3d 539 (Fla. 5th DCA 2011); Barrios-Cruz v. State, 63 So.3d 868 (Fla. 2d DCA 2011).