DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**NERO COOKE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-3497

[September 16, 2015]

Appeal of order denying rule 3.850 motion from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case No. 2010CF005839AXX.

Antonio Bugge, Fort Lauderdale, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The defendant appeals from the circuit court's order denying, without an evidentiary hearing, his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief alleging ineffective assistance of counsel for failing to advise him of his guilty plea's deportation consequences. The court denied the motion without an evidentiary hearing on two grounds: (1) the motion was facially insufficient; and (2) the motion and record conclusively demonstrated that the defendant was not entitled to relief. We conclude the court erred on both grounds. We also conclude the court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, did not necessarily remove any prejudice caused by counsel's alleged ineffective assistance, where the plea's deportation consequences, at least on the face of the defendant's motion, may have been "truly clear" at the time of the plea. Thus, we reverse the denial of the defendant's 3.850 motion, and remand for an evidentiary hearing on the motion.

We present this opinion in four parts: (1) the parties' arguments to the circuit court; (2) the circuit court's reasoning; (3) the parties' arguments to this court; and (4) our reasoning. Part 4 will contain three sub-parts explaining: (a) why the defendant's motion was facially sufficient; (b) why the motion and record did not demonstrate the defendant was not entitled to relief; and (c) why the court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, did not necessarily remove any prejudice caused by counsel's alleged ineffective assistance, where the plea's deportation consequences, at least on the face of the defendant's motion, may have been "truly clear" at the time of the plea.

## 1. The Parties' Arguments to the Circuit Court

On November 10, 2011, the defendant pled guilty to carrying a concealed firearm committed on May 19, 2010. On a plea form, he placed his initials next to the following sentence: "I understand that if I am not a United States Citizen, my plea *may* subject me to deportation pursuant to the laws and regulations governing the United States . . . and, this Court has no jurisdiction (authority) in such matters." (emphasis added).

During the plea colloquy, the court warned the defendant: "[I]f you're not a citizen, by pleading guilty today, that would negatively affect your immigration status, *probably* resulting in deportation and not being allowed back in to the country. Do you understand that?" (emphasis added). The defendant responded: "Yes, sir." The court adjudicated the defendant guilty and sentenced him to prison.

The defendant then filed his rule 3.850 motion seeking to vacate his plea, judgment, and sentence. The motion also incorporated supporting affidavits from the defendant and an immigration attorney. The motion alleged, in pertinent part:

> 3. At the time [the defendant] pled guilty to the charge, he was not a citizen of the United States . . . .
>
> 4. [The defendant] was never warned by his attorney that there would be mandatory consequences as a result of his plea. *See* Affidavit of [Defendant].
>
> 5. By entering the instant plea [the defendant] became mandatorily deportable from the United States. If [the defendant] did not have the instant conviction he would not

2

be deportable from the United States. *See* Immigration and Nationality Act (INA); Affidavit of Attorney . . . .

6. Pursuant to US Immigration law any non-citizen convicted of a firearm offense is deportable from the United States. *See* Immigration and Nationality Act at Section 237(a)(2)(C); Affidavit of Attorney . . . .

7. Had [the defendant] been warned by his attorney of the certain immigration consequences of his plea he would not have entered a plea in the instant case and instead would have chosen to proceed to trial. *See* Affidavit of [Defendant].

The defendant's affidavit alleged:

1. I am a citizen of [another country who] entered the United States on June 8, 2007, as a lawful permanent resident.

2. On December 1, 2011, I was placed into removal proceedings by the Department of Homeland Security (DHS).

3. I am deportable from the United States only because of my conviction in the instant case.

4. If I had known that by entering my plea in this case I would become subject to mandatory deportation I never would have entered it.

5. I was never advised by my criminal defense attorney of the immigration consequences of my plea.

The immigration attorney's affidavit alleged, in pertinent part:

3. [The defendant] became deportable from the Unites States under section 237(a)(2)(C) of the Immigration and Nationality Act (INA) on November 10, 2011 as an alien convicted any time after admission of a violation of any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory, which is a firearm or destructive devise [sic] (as defined in section 921(a) of Title 18) in violation of any law.

3

4. The moment [the defendant] entered his guilty plea he became mandatorily deportable from the United States.

5. Given the fact that this is [the defendant's] only criminal conviction and he is a lawful permanent resident of the United States if he did not have the instant conviction he would not be deportable from the United States.

Based on the allegations, the motion argued that the defendant received ineffective assistance of counsel. More specifically, the defendant argued that counsel must advise when a plea renders the defendant deportable, and that both misadvice and lack of advice in this regard constitutes ineffective assistance of counsel. The defendant also argued that a court's equivocal deportation warning does not cure the prejudice which counsel's misadvice or lack of advice causes.

The state's response, citing *Cano v. State*, 112 So. 3d 646, 648 (Fla. 4th DCA 2013), argued: "Where movant has received the standard 'may' or 'could' deportation warning required by [Florida Rule of Criminal Procedure] 3.172(c)(8), to state a claim for relief under *Padilla* [*v. Kentucky*, 559 U.S. 356 (2010)], a movant must establish the following":

(1) the movant was in the United States lawfully at the time of the plea;
(2) the plea is the sole basis for the movant's deportation;
(3) the law, as it existed at the time of the plea, subjected the movant to "virtually automatic" deportation;
(4) the "presumptively mandatory" consequence of deportation is clear from the immigration statute's face;
(5) counsel failed to accurately advise the movant about the plea's deportation consequences; and
(6) if counsel had advised the movant accurately, then the movant would not have entered the plea.

The state then concluded: "Pursuant to the above . . . to properly resolve this matter, *an evidentiary hearing is warranted*. At that time, it will be up to the defendant to satisfy the burden of proof. . . . *The State of Florida respectfully requests this Honorable Court to conduct an evidentiary hearing on defendant's instant Motion.*" (emphasis added).

4

## 2. The Circuit Court's Reasoning

Despite the state's concession that an evidentiary hearing was warranted, the circuit court entered a written order denying the defendant's motion without an evidentiary hearing. The court reasoned:

> First and foremost, the defendant fails to establish, much less even claim, that his attorney misadvised him concerning the deportation consequences of his plea. Furthermore, there is no allegation that [defense counsel] was ever advised by [the defendant] that he was not a citizen, or that [the defendant] even sought any advice as to the possible deportation consequences of his guilty plea. Therefore, the Court finds that there was no affirmative mis-advice by [defense counsel] as discussed above. [Defense counsel's] performance fell within the wide range of reasonable professional assistance, and was neither constitutionally deficient nor unreasonable. Therefore, he was not legally ineffective. *Strickland v. Washington,* 104 S. Ct. 2052 (1984); *Cano v. State,* 112 So. 3d 646 (Fla. 4th DCA 2013); *Padilla v. Kentucky,* 130 S. Ct. 1473 [(2010)].

> Second, even if [defense counsel] is deemed to be ineffective for failing to advise as to possible deportation consequences where there is not even an allegation that the defendant told [defense counsel] that he was not a citizen, then the sworn colloquy between [the defendant] and the [previous] trial judge amply cured any silence by [defense counsel], as claimed by the defendant. That sworn colloquy demonstrated that the [previous] trial judge advised the defendant that he "probably" would be subject to deportation as a result of his guilty plea. In this regard, the defendant's sworn affirmative understanding to the trial court's statement that "if you're not a citizen, by pleading guilty today, that would negatively affect your immigration status, probably resulting in deportation and not being allowed back in to the country" refutes [the defendant's] claim of ineffectiveness. . . . In this case, [the defendant's] sworn plea colloquy was thorough and complete and advised him he would probably be deported. [The defendant] is unable to establish any mis-advice by counsel and therefore, his claim must fail.

5

This appeal followed.  Because the circuit court's decision was based on its legal determinations only, our review is de novo.  *Cf. Hernandez v. State*, 124 So. 3d 757, 759 n.1 (Fla. 2012) ("[G]iven that the certified questions involve legal determinations . . . we employ a de novo standard of review.") (citation omitted).

### 3.  The Parties' Arguments to This Court

The defendant argues the circuit court erred in denying his motion without an evidentiary hearing.  In support of that argument, the defendant raises four sub-arguments.

First, because his motion and affidavit asserted his counsel never advised him that his plea would subject him to a certain and mandatory deportation, "an evidentiary hearing should be conducted to determine if the facts expressed in [the] motion are true."

Second, in reference to the court's reasoning that counsel may not have known that he was not a United States citizen:  "[T]he only way to determine exactly what occurred between [him] and his attorney is to conduct an evidentiary hearing. . . .  [E]ven assuming arguendo that somehow [counsel] did not know his immigration status[,] [counsel] had an affirmative duty to find it out and advise [him] that the instant plea would without a doubt cause him to be deported from the United States."

Third, the circuit court's equivocal warning, that the plea "probably" would result in his deportation, did not cure any ineffectiveness.

Fourth, the state agreed an evidentiary hearing was warranted and requested the court to conduct an evidentiary hearing.

The state, despite its concession in the circuit court that an evidentiary hearing was warranted, now argues that the court properly denied the defendant's motion without an evidentiary hearing for two reasons.

First, the defendant's motion was facially insufficient because it did not specify how his counsel failed to advise him accurately about his plea's deportation consequences.

Second, the defendant's plea form and affirmative response to the court's warning that the plea "probably" would result in deportation conclusively refuted his ineffective assistance claim.

## 4. Our Reasoning

We conclude the circuit court erred in finding: (1) the motion was facially insufficient; and (2) the motion and record conclusively demonstrated that the defendant was not entitled to relief.

We also conclude the court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, did not necessarily remove any prejudice caused by counsel's alleged ineffective assistance, where the plea's deportation consequences, at least on the face of the defendant's motion, may have been "truly clear" at the time of the plea.

Thus, the court erred in denying the defendant's motion without an evidentiary hearing.

### a. Why the Defendant's Motion Was Facially Sufficient

The defendant's motion was facially sufficient because he alleged, via his incorporated affidavit: "I was never advised by my criminal defense attorney of the immigration consequences of my plea." In other words, the defendant alleged his counsel did not inform him *at all* whether the plea carried the risk of deportation.

Counsel's alleged failure to give the defendant *any* advice regarding the risk of deportation violates *Padilla,* where the United States Supreme Court held: "[C]ounsel must inform [the] client whether [the] plea carries a risk of deportation." 559 U.S. at 374.

Contrary to the circuit court's finding of facial insufficiency, neither *Padilla* nor its progeny contain any requirement that a defendant's motion allege: (1) counsel *misadvised* him concerning the deportation consequences of his plea; (2) the defendant advised counsel that he was not a citizen; or (3) the defendant sought advice as to the plea's deportation consequences.

In fact, contrary to the circuit court's first point, the United States Supreme Court, in *Padilla,* expressly rejected the argument that an ineffective assistance claim exists in the deportation context "only to the extent that [the defendant] has alleged affirmative misadvice." *Id.* at 369. The Court reasoned:

> [T]here is no relevant difference between an act of commission and an act of omission in this context.

A holding limited to affirmative misadvice would invite two absurd results. First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement. When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all. Second, it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available. It is quintessentially the duty of counsel to provide [the] client with available advice about an issue like deportation and the failure to do so clearly satisfies the first prong of the *Strickland* analysis.

*Id.* at 370-71 (internal quotation marks, citations, and footnotes omitted).

For the same reasons, also off-target is the state's argument to this court that the defendant's motion was facially insufficient because it did not specify how his counsel failed to advise him *accurately* about his plea's deportation consequences. As mentioned above, the defendant did not allege, and *Padilla* did not require him to allege, that his counsel failed to advise him *accurately* whether the plea carried the risk of deportation. The defendant alleged, as *Padilla* permits him to allege, that his counsel did not inform him *at all* whether the plea carried the risk of deportation.

### b. Why the Motion and Record Did Not Demonstrate the Defendant Was Not Entitled To Relief

The motion and record did not demonstrate the defendant was not entitled to relief, because nowhere in the motion or in the record is it alleged that *counsel* informed the defendant whether his plea carried a risk of deportation.

The circuit court's error in this regard (which the state follows in its argument to this court) stems from the court's finding that a defendant's ineffective assistance of *counsel* claim in this context can be refuted by the *court's* colloquy with the defendant. That finding is incorrect. The only way in which the record can refute an ineffective assistance of *counsel* claim for failure to inform the defendant whether the plea carried

8

a risk of deportation is for the record to show that *counsel* informed the defendant whether the plea carried a risk of deportation. Here, the record contains no such showing. *Cf. Facey v. State*, 143 So. 3d 1003, 1004 (Fla. 4th DCA 2014) (record refuted the defendant's allegation that counsel failed to "tell him anything" about the immigration consequences where, during the plea colloquy, the defendant acknowledged talking with counsel "thoroughly about the consequences").

In other words, the circuit court's error stems from its apparent merging of *Strickland*'s two requirements for establishing an ineffective assistance of counsel claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

466 U.S. at 687. Here, the circuit court found that, "even if [defense counsel] is deemed to be ineffective for failing to advise as to possible deportation consequences," then the court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, "refute[d] [the defendant's] claim of ineffectiveness." That is incorrect. What the court could have found, *in theory*, is that counsel's performance, on the face of the record only, was deficient, but the court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, *removed any prejudice* caused by counsel's alleged ineffective assistance. *Cf. Facey*, 143 So. 3d at 1004 (record refuted the defendant's allegation that he was prejudiced by counsel allegedly failing to advise him to consult an immigration attorney where the defendant signed a plea form which advised him that the plea "will" result in his deportation).

However, even the theory that the court's warning during the plea colloquy removed any prejudice caused by counsel's alleged ineffective assistance does not hold water. Put another way, the court's warning – that the plea "probably" would result in the defendant's deportation – *did not* necessarily remove any prejudice caused by counsel's alleged ineffective assistance. We expound upon this point in the next section.

*c. Why the Court's Warning During the Plea Colloquy,*
*That the Plea "Probably" Would Result in the Defendant's Deportation,*
*Did Not Necessarily Remove Any Prejudice*
*Caused By Counsel's Alleged Ineffective Assistance*

The court's warning during the plea colloquy, that the plea "probably" would result in the defendant's deportation, *did not* necessarily remove any prejudice caused by counsel's alleged ineffective assistance, because the plea's deportation consequences, at least on the face of the defendant's motion, may have been "truly clear" at the time of the plea.

We base this conclusion on our reading of *Padilla, Hernandez,* and the Immigration and Nationality Act (INA), as codified in the United States Code. We address each in turn.

In *Padilla,* the United States Supreme Court held:

> When the law is not succinct and straightforward . . . a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges *may* carry a risk of adverse immigration consequences. *But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear.*

559 U.S. at 369 (emphasis added; footnote omitted).

In *Hernandez,* the Florida Supreme Court held that *Padilla*'s "truly clear" standard applying to counsel's deportation advice also applied to Florida Rule of Criminal Procedure 3.172(c)(8)'s court-required deportation warning[1]:

---

[1] Rule 3.172(c)(8) provides, in pertinent part:

> (c) Determination of Voluntariness. Except when a defendant is not present for a plea . . . the trial judge should, when determining voluntariness, place the defendant under oath and shall address the defendant personally and shall determine that he or she understands:
>
> . . . .
>
> (8) that if he or she pleads guilty or nolo contendere, if he or she is not a United States citizen, the plea *may* subject him or her to deportation pursuant to the laws and regulations governing the United States Immigration and Naturalization Service.

Where deportation consequences are "truly clear," the United States Supreme Court in *Padilla* requires effective counsel to provide more than equivocal advice concerning those consequences. *Padilla,* 130 S.Ct. at 1483. *At least in those circumstances, an equivocal warning from the trial court is less than what is required from counsel and therefore cannot, by itself, remove prejudice resulting from counsel's deficiency.*

The fact that an equivocal warning from the trial court is insufficient to categorically eliminate prejudice in every circumstance is not to say, however, that the plea colloquy is meaningless . . . . Instead, a colloquy containing an equivocal warning from the trial court and an acknowledgment from the defendant contributes to the totality of the circumstances by providing evidence that the defendant is aware of the possibility that a plea could affect his immigration status. In other words, the colloquy required by rule 3.172(c)(8) may refute a defendant's postconviction claim that he had no knowledge that a plea could have possible immigration consequences; *however, it cannot by itself refute a claim that he was unaware of presumptively mandatory consequences.*

124 So. 3d at 763 (emphasis added).

Thus, the issue for this court is whether the defendant's plea to carrying a concealed firearm, at least on the face of the defendant's motion and the INA, had:

- "possible immigration consequences," *id.* (i.e., it was not "truly clear" that the plea would result in deportation), for which the court's rule 3.172(c)(8) warning that the plea "probably" would result in the defendant's deportation may have been sufficient; or

- "presumptively mandatory consequences," *id.* (i.e., it was "truly clear" that the plea would result in deportation), for which the court's rule 3.172(c)(8) warning that the plea "probably" would result in the defendant's deportation may have been insufficient.

---

(emphasis added).

11

After examining the INA, we conclude the plea's deportation consequences, at least on the face of the defendant's motion and the INA, may have had "presumptively mandatory consequences," *id.* (i.e., it may have been "truly clear" that the plea would result in deportation), for which the court's rule 3.172(c)(8) warning that the plea "probably" would result in the defendant's deportation may have been insufficient.

The defendant's motion and his immigration attorney's supporting affidavit cite section 237(a)(2)(C) of the INA as the basis for why the defendant's plea to carrying a concealed firearm made him "mandatorily deportable."

INA section 237(a)(2)(C), codified at 8 U.S.C. § 1227(a)(2)(C) and entitled "Deportable aliens," provides, in pertinent part:

> (a) Classes of deportable aliens
>
> Any alien . . . in and admitted to the United States *shall, upon the order of the Attorney General, be removed* if the alien is within one or more of the following classes of deportable aliens:
>
> . . . .
>
> (2) Criminal offenses
>
> . . . .
>
> (C) Certain firearm offenses
>
> Any alien who at any time after admission is convicted under any law of . . . carrying . . . any weapon . . . which is a firearm . . . in violation of any law *is deportable.*

(emphasis added).

Further, INA section 238(a)(1), codified at 8 U.S.C. § 1228(a)(1) and entitled "Expedited removal of aliens convicted of committing aggravated felonies," provides, in pertinent part:

> (a) Removal of criminal aliens
>
> (1) In general

12

The Attorney General shall provide for the availability of special removal proceedings at certain Federal, State, and local correctional facilities for aliens convicted of any criminal offense covered in *section 1227(a)(2) . . . (C) . . . of this title . . . .* Such proceedings shall be conducted . . . *in a manner which assures expeditious removal following the end of the alien's incarceration for the underlying sentence.*

Lastly, INA section 240A(a), codified at 8 U.S.C. § 1229b(a) and entitled "Cancellation of removal; adjustment of status," provides, in pertinent part:

(a)  Cancellation of removal for certain permanent residents

The Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien --

(1) has been an alien lawfully admitted for permanent residence for not less than 5 years,

(2)  has resided in the United States continuously for 7 years after having been admitted in any status, and

(3)  has not been convicted of any aggravated felony.[2]

Applying the foregoing provisions to the face of the defendant's motion, the defendant's plea to carrying a concealed firearm may have had "presumptively mandatory consequences" (i.e., it may have been "truly clear" that the plea would result in deportation) for the following reasons:

- The plea to carrying a concealed firearm subjects the defendant to mandatory deportation upon the order of the Attorney General, *see* 8 U.S.C. § 1227(a)(2)(C);

- The plea to carrying a concealed firearm subjects the defendant to expedited deportation, *see* 8 U.S.C. § 1228(a)(1); and

---

[2]  8 U.S.C. § 1101(a)(43) defines "aggravated felony" by identifying approximately two dozen qualifying offenses, but does not identify carrying a concealed firearm as one of those qualifying offenses.

- The Attorney General may not cancel the defendant's deportation, because he has not been an alien lawfully admitted for permanent residence for not less than 5 years and has not resided in the United States continuously for 7 years after having been admitted in any status, *see* 8 U.S.C. § 1229b(a)(1) & (2). According to the defendant's affidavit, he entered the United States as a lawful permanent resident on June 8, 2007, which was less than five years from his offense on May 19, 2010, and his plea and conviction on November 10, 2011.

Thus, because the plea's deportation consequences, at least on the face of the defendant's motion and the INA, may have had "presumptively mandatory consequences" (i.e., it may have been "truly clear" that the plea would result in deportation), the court's rule 3.172(c)(8) warning that the plea "probably" would result in the defendant's deportation may have been insufficient. *Padilla*, 559 U.S. at 369; *Hernandez*, 124 So. 3d at 763. As a result, the circuit court erred in denying the defendant's 3.850 motion without an evidentiary hearing.

Based on the foregoing, we reverse the circuit court's order denying the defendant's rule 3.850 motion without an evidentiary hearing. We remand for the court to conduct an evidentiary hearing on the motion.[3]

---

[3] In reaching our decision, we note an error in our *Facey* opinion which is referenced in section 4.b. above. In *Facey*, we stated that the defendant "was not convicted of an aggravated felony and may qualify for discretionary cancellation of removal. *See* 8 U.S.C. § 1229b." 143 So. 3d at 1005. That statement was error because it ignored section 1229b's other two requirements for a defendant to qualify for discretionary cancellation of removal: being "lawfully admitted for permanent residence for not less than 5 years" and having "resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(1) & (2). The defendant in *Facey* "was admitted to the United States on September 11, 2007" and "[t]he offense was committed in November 2010." 143 So. 3d at 1005. Thus, at the time the of the offense, the defendant had not been "lawfully admitted for permanent residence for not less than 5 years" and had not "resided in the United States continuously for 7 years after having been admitted in any status." As a result, he did not meet section 1229b's other two requirements for a defendant to qualify for discretionary cancellation of removal.

However, that error was harmless (and is dicta) because we based our decision to affirm the circuit court's denial of the defendant's rule 3.850 motion on two other independent grounds: (1) the record refuted the defendant's allegation that counsel failed to "tell him anything" about the immigration consequences where, during the plea colloquy, the defendant acknowledged talking with counsel "thoroughly about the consequences"; and (2) the record

*Reversed and remanded for an evidentiary hearing.*

WARNER, J., concurs.
CIKLIN, C.J., dissents with opinion.

CIKLIN, C.J., dissenting.

I respectfully dissent. The trial judge advised the defendant during the plea colloquy that he "probably" will be deported. This has not been shown to be inaccurate.

Requiring an attorney to provide definitive advice that deportation is "certain" may compel attorneys to provide wrong advice. *See State v. Shata,* No. 2013AP1437-CR, 2015 WL 4112673, at *19-20 (Wis. July 9, 2015) (holding that lawyer's advice that there was a "strong chance" of deportation was not deficient and attorney was not required to tell him that his conviction would "absolutely result" in deportation). As explained in *Shata,* federal officials have prosecutorial discretion as to removal proceedings, and there may be "avenues for deportable aliens to avoid deportation." *Id.* at *14. Other courts have concluded that an attorney is not required to advise a client that deportation is certain to occur. *Commonwealth v. Escobar,* 70 A.3d 838, 841 (Pa. Super. Ct. 2013)(concluding that counsel's advice that deportation was likely and possible was correct and not deficient), *appeal denied,* 86 A.3d 232 (Pa. 2014); *Chacon v. State,* 409 S.W.3d 529, 537 (Mo. Ct. App. 2013) (holding that counsel's advice that it was "very likely" defendant would be deported was not deficient).

Immigration law is often complex, and state courts and criminal defense lawyers are generally not well versed in it. Requiring state courts to make definitive pronouncements and delve deep into immigration law matters in postconviction proceedings may further complicate the law.

I would hold that the court's accurate warning in this case conclusively refutes the potential prejudice.

---

refuted the defendant's allegation that he was prejudiced by counsel allegedly failing to advise him to consult an immigration attorney where the defendant signed a plea form which advised him that this plea "will" result in his deportation. 143 So. 3d at 1004. Although the error was dicta, we note the error here so that courts and practitioners do not rely on the error in the future.

*       *       *

*Not final until disposition of timely filed motion for rehearing.*