# Supreme Court of Florida

_____

No. SC2022-0417
_____

**MATTHEW DETTLE,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

October 24, 2024

COURIEL, J.

In Florida, it is a felony to use a computer or other device to solicit a child, or a person believed to be a child, to engage in unlawful sexual conduct. *See* § 847.0135(3), Fla. Stat. (2012). It is also a felony to travel to meet a minor after such solicitation. *See* § 847.0135(4)(a), Fla. Stat. (2012). And it is a felony to use a two-way communications device to facilitate or further the commission of a felony. *See* § 934.215, Fla. Stat. (2012). In this case, Matthew Dettle was charged with and convicted of all three of these offenses. His conviction for the third offense was vacated. Before us he

argues that the two remaining convictions transgress the United States Constitution's promise that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." *See* amend. V, U.S. Const.[1]

Historically, Florida courts have varied in how they have determined whether multiple convictions violate that constitutional guarantee. Some have analyzed the evidentiary record to determine whether a defendant's convictions were based on the same or separate conduct; others have looked only to the charging

---

1. Dettle also says his solicitation conviction violates our State's rules of court. *See* Fla. R. Crim. P. 3.850(a)(1) (grounds for a postconviction motion may include that "the judgment was entered or sentence was imposed in violation of the Constitution or laws of the United States or the State of Florida"). But he does not specifically allege a violation of the Florida Constitution, which shares the United States Constitution's guarantee against double jeopardy. *See* art. 1, § 9, Fla. Const. (providing that "[n]o person shall be . . . twice put in jeopardy for the same offense"); *see also Trappman v. State*, 384 So. 3d 742, 746-47 (Fla. 2024) (explaining that the double jeopardy clause in the Florida Constitution "was intended to mirror [the] intention of those who framed the double jeopardy clause of the fifth amendment" (alteration in original) (quoting *Carawan v. State*, 515 So. 2d 161, 164 (Fla. 1987))); *Valdes v. State*, 3 So. 3d 1067, 1069 (Fla. 2009) ("The constitutional protection against double jeopardy is found in both article I, section 9, of the Florida Constitution and the Fifth Amendment to the United States Constitution, which contain double jeopardy clauses.").

document, rejecting an alleged offense if it requires the State to prove the same thing as another one charged. In *Lee v. State*, 258 So. 3d 1297, 1304 (Fla. 2018), we announced that a court must review only the charging document to determine whether multiple convictions violate a defendant's constitutional right against double jeopardy.

Today, we consider a certified question of great public importance concerning the application of that rule: "Does the holding in [*Lee*] provide retroactive relief in postconviction proceedings pursuant to Fla. R. Crim. P. 3.850?" *Dettle v. State* (*Dettle II*), 334 So. 3d 346, 347 (Fla. 1st DCA 2021).[2]

The answer is no: *Lee* does not apply retroactively to cases that were already final when it was decided. Because the answer to the certified question is the same whether we apply the retroactivity standard we adopted in *Witt v. State*, 387 So. 2d 922 (Fla. 1980), or the one set out by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion), we need not choose

---

2. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const. Because the certified question presents a pure question of law, our review is de novo. *See Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 981 (Fla. 2018).

between the two to resolve this case, even though the State urges us to recede from the former and adopt the latter.[3]

**I**

Matthew Dettle was charged in 2012 in a single three-count information. Two years later, a jury found him guilty of each count. Dettle appealed, including on double jeopardy grounds.

"The most familiar concept of the term 'double jeopardy' is that the Constitution prohibits subjecting a person to multiple prosecutions, convictions, and punishments for the same criminal offense." *Valdes*, 3 So. 3d at 1069 (noting, too, that "there is no constitutional prohibition against multiple punishments for different offenses arising out of the same criminal transaction as long as the Legislature intends to authorize separate punishments"). As we have recently explained, the U.S. Supreme Court has "recognized three separate guarantees embodied in the Double Jeopardy Clause"—namely, it "protects against a second

---

3. For good measure, the State also urges us to recede from *Lee*, arguing it was wrongly decided on the merits. That issue is not part of the certified question and need not be addressed to resolve this case.

prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Trappman v. State*, 384 So. 3d 742, 747 (Fla. 2024) (quoting *Justs. of Bos. Mun. Ct. v. Lydon*, 466 U.S. 294, 306-07 (1984)). Dettle's double jeopardy concerns involve the last of these guarantees.

The First District Court of Appeal found that, "under the facts of this case," Dettle's simultaneous convictions for traveling to meet a minor after solicitation, and for unlawful use of a two-way communications device, violated the prohibition against double jeopardy. *Dettle v. State* (*Dettle I*), 218 So. 3d 910, 910 (Fla. 1st DCA 2016). So the court vacated the latter conviction. But it affirmed Dettle's remaining two convictions "because the illegal acts solicited [were] separate illegal acts in this case." *Id.* at 910 (distinguishing *State v. Shelley*, 176 So. 3d 914 (Fla. 2015), which held that dual convictions for solicitation and traveling after solicitation based on the same conduct violate double jeopardy).

Dettle's convictions became final in 2017. One year later, this Court decided *Lee v. State*, 258 So. 3d 1297 (Fla. 2018). In *Lee*, as discussed, we held that, "to determine whether multiple convictions

- 5 -

of solicitation of a minor, unlawful use of a two-way communications device, and traveling after solicitation of a minor are based upon the same conduct for purposes of double jeopardy, the reviewing court should consider only the charging document—not the entire evidentiary record." *Id.* at 1304.

Dettle, arguing that *Lee* should be given retroactive effect, filed a postconviction motion under Florida Rule of Criminal Procedure 3.850. The trial court denied relief, finding that *Lee* did not apply retroactively, and further denied Dettle's subsequent motion for rehearing. Dettle appealed. The First District affirmed in a per curiam decision, concluding: "*Lee* does not apply retroactively to cases such as [Dettle's] that were already final when *Lee* was decided." *Dettle II*, 334 So. 3d at 346-47.

The First District denied Dettle's subsequent motion for rehearing and rehearing en banc. But it granted Dettle's request to certify the question of great public importance before us.

- 6 -

## II

Our holding in *Lee* does not apply retroactively.

### A

We have said that "[n]ew rules of law announced by this Court or the United States Supreme Court generally apply to all cases that are pending on direct review or are otherwise not final"—they do not, normally, apply retroactively. *White v. State*, 214 So. 3d 541, 549 (Fla. 2017). And for good reason. To give such rules retroactive effect would bake into each conviction an "absence of finality [that would] cast[] a cloud of tentativeness over the criminal justice system, benefiting neither the person convicted nor society as a whole." *Witt*, 387 So. 2d at 925. The orderly administration of justice and courts' responsible stewardship of resources depend on the finality of criminal convictions. *See id.* at 925 n.* (quoting *United States v. Addonizio*, 442 U.S. 178 n.11 (1979)). Thus, we have said that "[t]he importance of finality in any justice system, including the criminal justice system, cannot be understated." *Id.* at 925; *see also Teague*, 489 U.S. at 309 (discussing finality as "essential to the operation of our criminal justice system").

There are, however, exceptions. In *Witt*, we relied on *Linkletter v. Walker*, 381 U.S. 618 (1965), to fashion a retroactivity test that applies "where a change of law is asserted as a ground for collateral relief under Rule 3.850." *See* 387 So. 2d at 929 n.24. The U.S. Supreme Court subsequently abandoned *Linkletter* and, in *Teague*, set forth a new federal retroactivity standard. Under both tests, we arrive at the same conclusion: the rule we announced in *Lee* is not of the exceptional kind to which we are bound to give retroactive effect.

**B**

In *Witt*, we followed the U.S. Supreme Court's *Linkletter* analysis for determining retroactivity: consider the old rule, by analyzing the extent to which it has been relied on, and the new rule, by analyzing its purpose and how applying it retroactively would affect the administration of justice. *See id.* at 926. The *Witt* analysis starts with the understanding that a change of law does not apply retroactively "unless the change: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance." *Id.* at 931. Because *Lee*, a decision of this Court,

- 8 -

involves the constitutional issue of double jeopardy, the parties agree that the retroactivity analysis we must undertake here hinges on the third prong: whether *Lee* constitutes a development of fundamental significance.

It does not. We said in *Witt* that a change in law is of fundamental significance when it (1) places "beyond the authority of the state the power to regulate certain conduct or impose certain penalties," or (2) is "of sufficient magnitude to necessitate retroactive application"[4] under the three-factor test in *Linkletter*. *Id.*

---

4. Under *Witt*, whether a rule qualifies for retroactive application depends in part on whether it falls into the (judicially created) category of rules that are "of fundamental significance," which in turn depends in part on whether the rule is "of sufficient magnitude to necessitate retroactive application." *Witt*, 387 So. 2d at 929, 931. In deciding whether the change is "of sufficient magnitude," we consider several factors that the U.S. Supreme Court articulated in its *Linkletter* test. The defining feature (and glitch) of any judicially created multi-factor balancing test is its pliability in practice. For that reason, we have previously explained our "war[iness] of any invocation of multi-factor *stare decisis* tests or frameworks," stating: "They are malleable and do not lend themselves to objective, consistent, and predictable application. They can distract us from the merits of a legal question and encourage us to think more like a legislature than a court." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020). And here, the pliability of the *Linkletter* factors means that the *Witt* rule allows a court to give retroactive effect, more or less, to rules it finds meritorious of retroactive effect.

at 929. The first of those categories, the parties agree, is not at issue. We turn, then, to *Linkletter*'s three-factor test.

Under *Linkletter*, whether a case is "of sufficient magnitude to necessitate retroactive application" turns on "(a) the purpose to be served by the new rule; (b) the extent of reliance on the old rule; and (c) the effect on the administration of justice of a retroactive application of the new rule." *Id.* at 926 (citing cases). We have said this retroactivity analysis is supposed to balance the justice system's dual goals of fairness and finality. *See id.* And, we have said, we use it to determine whether a new rule amounts to a "jurisprudential upheaval[]" (to which we give retroactive effect), or whether it is more like an "evolutionary refinement[] in the criminal law" (to which we do not). *Id.* at 929; *see also Phillips v. State*, 299 So. 3d 1013, 1021 (Fla. 2020) ("[O]ur Court in *Witt* equated new rules of law that are of 'sufficient magnitude' to merit retroactive application with 'jurisdictional upheavals.'" (quoting *Witt*, 387 So. 2d at 929)).

*Linkletter*'s first factor, considering the purpose of the new rule, counsels against applying *Lee* retroactively. We have declined to give retroactive effect to new rules when the "purpose of the new

- 10 -

rule can be achieved without applying the rule retroactively."
*Williams v. State*, 421 So. 2d 512, 515 (Fla. 1982). That is the case here, as we identified no purpose in *Lee* that required remedial application of the new rule to already final cases. Rather, we answered "*how* a reviewing court should determine whether multiple convictions are based upon the same conduct," *Lee*, 258 So. 3d at 1299, a fundamentally procedural change in the way a reviewing court is to consider the defendant's double jeopardy rights that does not on its face cast doubt on, or demand remedy of, the prior rule's application. *See Benyard v. Wainwright*, 322 So. 2d 473, 475 (Fla. 1975) ("Substantive law prescribes the duties and rights under our system of government. . . . Procedural law concerns the means and method to apply and enforce those duties and rights.").

We have reached the opposite conclusion on those rare occasions in which a new rule announced by this Court or the U.S. Supreme Court recognized an additional substantive legal protection ignored by the displaced rule, or so significant a procedural change that its absence in prior convictions renders them unfair or unreliable. Perhaps the most frequently cited

example—indeed, *Witt* cites it—is the rule of *Gideon v. Wainwright*, 372 U.S. 335 (1963), that each state must provide counsel to every indigent defendant charged with a felony at all critical stages of the proceeding. *Witt*, 387 So. 2d at 927, 929. That case recognized a significant additional dimension of protection under the Sixth Amendment, a purpose that can be distinguished in its substance and magnitude from the change at issue here.

In *Mosley v. State*, 209 So. 3d 1248 (Fla. 2016), we concluded that "the purpose of [two] holdings"—one of the U.S. Supreme Court, another of this Court—"weigh[ed] heavily in favor of [their] retroactive application" to postconviction defendants whose sentences of death became final after the U.S. Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002). *See Mosley*, 209 So. 3d at 1278. In the first decision, *Hurst v. Florida*, 577 U.S. 92 (2016), the U.S. Supreme Court concluded that the "Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death" and held our capital sentencing statute unconstitutional. *Id.* at 94; *see also Mosley*, 209 So. 3d at 1272. And the second decision, *Hurst v. State*, 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole*, 297 So. 3d 487 (Fla.

- 12 -

2020), "emphasized the critical importance of a unanimous verdict within Florida's independent constitutional right to trial by jury under article I, section 22, of the Florida Constitution." *Mosley*, 209 So. 3d at 1278; *see also Asay v. State*, 210 So. 3d 1, 18-19 (Fla. 2016) (finding that *Witt*'s first factor weighed in favor of retroactively applying *Hurst v. Florida* and *Hurst v. State* to capital defendants whose sentences were final before *Ring* because "the ultimate decision of whether a defendant lives or dies rests on these factual findings, only strengthening the purpose of the new rule" but denying retroactivity based on *Witt*'s remaining two factors). While the purposes of these rules are in some sense procedural—they speak to what the state must do to prove its case beyond a reasonable doubt—they are of substantive character, too, for they speak to the defendant's right to a unanimous determination of facts on which turn his or her eligibility for a sentence of death.

We have little trouble distinguishing these cases from *Lee*. The rule announced in *Lee* is about the procedure a reviewing court should use in weighing a double jeopardy claim. It recognizes no additional scope to the defendant's Fifth Amendment double jeopardy right. *See State v. Glenn*, 558 So. 2d 4, 8 (Fla. 1990)

- 13 -

(declining to give retroactive effect to a rule that "attempt[ed] to harmonize and refine the law as it is applied in determining the proper method of construing criminal statutes in light of the constitutional prohibitions against double jeopardy"). And we are not persuaded that the new rule's purpose was to "improve the accuracy of trials or . . . improve the reliability of evidence." *Chandler v. Crosby*, 916 So. 2d 728, 730-31 (Fla. 2005) (declining to give retroactive effect to a new rule, which did not "present a more compelling objective that outweighs the importance of finality").

Nor does the second *Linkletter* factor, which requires us to consider the extent of reliance on the old rule allowing review of the evidentiary record, support *Lee*'s retroactive application. Again, *Lee*'s fundamentally procedural character matters, for reliance interests generally are "lowest in cases—like this one—'involving procedural and evidentiary rules.' " *Poole*, 297 So. 3d at 507 (quoting *Payne v. Tennessee*, 501 U.S. 808, 828 (1991)).

The district courts were split in how they decided whether multiple convictions were based on the same conduct. *See Lee*, 258 So. 3d at 1303 ("Before and after this Court's opinion in *Shelley*, the district courts have disagreed on how a reviewing court should

determine whether multiple convictions are based on the same conduct."). Some prohibited trial courts from reviewing the evidentiary record. *See, e.g., id.* at 1299 (collecting cases). Others allowed review of the record. *See, e.g., Assanti v. State*, 227 So. 3d 679, 681-82 (Fla. 1st DCA 2017) (reviewing both the charging document and the evidentiary record to hold that the defendant's convictions for traveling to meet a minor to engage in sexual conduct and solicitation of a child for unlawful sexual conduct did not violate double jeopardy because the "information . . . charged the two offenses on different dates, and the evidence supports the State's contention that the two charges were not based on the same conduct"); *McCarter v. State*, 204 So. 3d 529, 530 (Fla. 1st DCA 2016) (reviewing the evidentiary record to conclude that the "solicitation and traveling convictions arose from different criminal episodes and acts, which involved different dates, locations, and criminal goals" and thus did not violate double jeopardy). For these reasons, the reliance interests here are at best an inconclusive basis upon which to give *Lee* retroactive effect. *See Asay*, 210 So. 3d at 19-20 (concluding the Court's extensive reliance on the old rule, "spann[ing] decades' worth of capital cases," "weigh[ed] heavily

against retroactive application" of the new rule); *Chandler*, 916 So. 2d at 730 (concluding the *Witt* factors weighed against retroactive application in part because the old rule "was relied on by trial courts for over 20 years"); *Williams*, 421 So. 2d at 515 ("That significant reliance has been placed on the old rule is an important factor supporting prospective application of the new rule.").

The third *Linkletter* factor considers the effect of applying a new rule on the administration of justice. "This final consideration in the retroactivity equation requires a balancing of the justice system's goals of fairness and finality . . . ." *Ferguson v. State*, 789 So. 2d 306, 312 (Fla. 2001). We find the balance tips against giving retroactive effect to the rule in *Lee*. Applying *Lee* retroactively would require the parties to review charging documents from long-ago convictions. So too would it require the courts to resentence defendants—again, following long-ago convictions—whenever vacating a lesser conviction could materially affect the sentence of greater conviction. And while Dettle argues that applying *Lee* retroactively would not require new trials, that is not dispositive to our analysis. Even where retroactive application of the law would require only resentencing, rather than retrial, "there is an important

- 16 -

consideration regarding the impact a new sentencing proceeding would have on the victims' families and their need for finality." *Asay*, 210 So. 3d at 22.

These finality concerns are not to be taken lightly. In fact, finality is such a "strong concern" that, in practice, "this Court rarely finds a change in decisional law to require retroactive application." *Glenn*, 558 So. 2d at 7-9 (collecting cases and ultimately declining to retroactively apply an "evolutionary refinement of decisional law" and "emphasiz[ing] that the policy interests of decisional finality weigh heavily"). We said in *Witt* that disrupting finality interests to accommodate mere "evolutionary refinements in the criminal law," including "for procedural fairness" or "other like matters," would "destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit." *Witt*, 387 So. 2d at 929-30.

Thus, using the test described in *Witt*, we conclude that *Lee* does not reach the high bar we have set for rules to meet before we

say that they, unlike most, require us to upset finality interests by giving them retroactive effect.

## C

*Teague,* which sets out a retroactivity standard with fewer moving parts than the one we articulated in *Witt,* compels the same result. Initially, under *Teague,* new rules of constitutional law could not apply retroactively to postconviction cases unless they were substantive or announced a "watershed" rule of criminal procedure that was "implicit in the concept of ordered liberty." *Teague,* 489 U.S. at 311 (quoting *Mackey v. United States,* 401 U.S. 667, 693 (1971)). The standard has evolved. In *Edwards v. Vannoy,* the U.S. Supreme Court deemed *Teague*'s "watershed" prong "moribund" and imposed a bright-line rule: new procedural rules—that is, those that "alter 'only the manner of determining the defendant's culpability' "—do not apply retroactively on collateral review. 593 U.S. 255, 274, 276 (2021) (quoting *Schriro v. Summerlin,* 542 U.S. 348, 353 (2004)). Instead, only substantive rules—those that "alter 'the range of conduct or the class of persons that the law punishes' "—can apply retroactively. *Id.* at 276 (quoting *Summerlin,* 542 U.S. at 353).

- 18 -

The inquiry under *Teague*, as modified in *Edwards*, is whether a rule is procedural or substantive. Only the latter can be applied retroactively. *Lee* is squarely a procedural rule: it resolved the question "*how* a reviewing court should determine whether multiple convictions are based upon the same conduct" in the context of the specific convictions before it. *Lee*, 258 So. 3d at 1299; *see also Welch v. United States*, 578 U.S. 120, 131 (2016) ("If a new rule regulates only the procedures for determining culpability, the *Teague* balance generally tips in favor of finality."). Thus, under *Teague*, as under *Witt*, *Lee* does not apply retroactively.

**D**

The State urges us to recede from *Lee* or, alternatively, to recede from *Witt* and adopt *Teague*. We decline to do so. Our answer to the certified question remains the same whether we apply *Witt* or *Teague*, and we need not address *Lee*'s soundness to resolve this case.

**III**

We answer the certified question in the negative and affirm the decision of the First District.

It is so ordered.

MUÑIZ, C.J., and LABARGA, GROSSHANS, and FRANCIS, JJ., concur.

CANADY, J., concurs specially with an opinion.

SASSO, J., concurs specially with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, J., specially concurring.

I agree that under *Witt*, our decision in *Lee* should not be given retroactive effect on postconviction review and that the decision of the First District therefore should be approved. I am content to resolve this case under *Witt*. I agree, generally, with the majority's line of analysis,[5] but I write to emphasize key aspects of

---

5. I do not agree with the majority's analysis of the reliance issue. *See* majority op. at 14-16. The citation of *Poole*'s statement concerning reliance interest is inapposite. Under *Witt*, the relevant reliance interests are those of the government. In its statement of the threefold test that we subsequently adopted in *Witt*, *Stovall v. Denno*, 388 U.S. 293, 297 (1967), refers to the second part of that test as "the extent of the reliance by law enforcement authorities on the old standards." The reliance interests relevant under *Witt* count against retroactivity. The majority opinion suggests, however, that the reliance interests might be a "basis upon which to give . . . retroactive effect" to a new rule. Majority op. at 15. Under *Poole*, the relevant potential reliance interests are those of parties arguing that existing law should be maintained. *Poole*'s point is that ordinarily parties do not justifiably place significant reliance on the continuing validity of procedural and evidentiary rules and that any reliance interests asserted on that basis will be unavailing to entrench a seriously erroneous precedent. The analysis of the

- 20 -

our *Witt* doctrine that provide some clarity that helps reduce the uncertainty surrounding retroactivity analysis. I also write to express my sympathy for Justice Sasso's view that we should in a future case fully re-examine the appropriateness of our *Witt* framework.

*Witt*'s foundational principle is that retroactive application on postconviction review should not be given "in the absence of fundamental and constitutional law changes which cast serious doubt on the veracity or integrity of the original trial proceeding." *Witt*, 387 So. 2d at 929; *see also* Fla. R. Crim. P. 3.850(b)(2) (requiring allegation of "the fundamental constitutional right asserted" as a predicate for seeking retroactive application of a new rule). Here, the rule adopted in *Lee* does not "cast serious doubt on

---

reliance interests of the government that militate against retroactive application of a new rule proceeds in an entirely different fashion. This is manifest in *Witt*'s teaching that the category of "evolutionary refinements"—into which most procedural and evidentiary rule changes will necessarily fall—will not be eligible for retroactive application. The government's reliance on the old rule in such cases—which by their very nature are frequent—points against retroactive application. So such a new rule that overturned precedent because no reliance interests required the maintenance of that precedent will most likely be denied retroactive application because other reliance interests—i.e., the government's reliance on the old rule—cut against unsettling final judgments.

the veracity or integrity" of proceedings conducted before *Lee* was decided. Under the pre-*Lee* law, there is no serious doubt that Dettle was subjected to multiple punishments only for distinct instances of criminal conduct in which he engaged.

Another key aspect of our *Witt* doctrine is the critical dichotomy drawn by *Witt* in its discussion of its second broad category—which the parties here agree is the relevant element of *Witt*. In this category of "those changes of law which are of sufficient magnitude to necessitate retroactive application as ascertained by the three-fold test of *Stovall* [*v. Denno*, 388 U.S. 293 (1967)] and *Linkletter*," *Witt* establishes a critical divide between "jurisprudential upheavals" and "evolutionary refinements." 387 So. 2d at 929. This dichotomy establishes a guiding principle for the weighing process involved in the application of the threefold *Stovall*/*Linkletter* test. As *Witt* says, and as our cases have repeated over and over, "evolutionary refinements in the criminal law" do not justify "an abridgement of the finality of judgments." *Phillips*, 299 So. 3d at 1021 (quoting *Witt*, 387 So. 2d at 929); *see, e.g., State v. Barnum*, 921 So. 2d 513, 519 (Fla. 2005); *Hughes v. State*, 901 So. 2d 837, 844 (Fla. 2005)*; McCuiston v. State*, 534 So. 2d 1144, 1146

(Fla. 1988). The modest procedural change adopted by the decision in *Lee* is readily identifiable as an "evolutionary refinement." By no stretch of the imagination could it be considered a "jurisprudential upheaval."

I share the concern that the *Stovall*/*Linkletter* threefold test is subject to judicial manipulation, but that potential for abuse is curbed—if not eliminated—when proper attention is given to the principle that "evolutionary refinements" in the law will not be given retroactive effect along with *Witt*'s foundational teaching that only new rules that "cast serious doubt on the veracity or integrity" of prior proceedings should be applied retroactively.[6]

In view of the potential for the misapplication of *Witt* and the changing landscape of federal law from which *Witt* was derived, re-

---

6. Of course, our Court has not always paid attention to these basic features of *Witt*. For example, in *Mosley*, which gave limited retroactive effect to *Hurst v. Florida* and *Hurst v. State*, our analysis made no mention of *Witt*'s teaching that retroactive effect should be given only to new rules that "cast serious doubt on the veracity or integrity" of prior proceedings and new rules that constitute "jurisprudential upheavals." I adhere to my view that *Mosley* was wrongly decided, and that it is in any event "the ghost of a precedent" given our decision in *Poole*, which destroyed the underpinnings of *Mosley*'s analysis. *Brown v. State*, 304 So. 3d 243, 281 (Fla. 2020) (Canady, C.J., concurring in result).

examination of *Witt* in a proper case is called for.  We should undertake such a re-examination, however, only with full briefing on the issue, including consideration of relevant statutory and rule provisions, as well as the historical scope of the writ of habeas corpus.

In the meantime, *Witt* requires approval of the decision now on review.

SASSO, J., specially concurring.

I agree with the majority's conclusion that *Lee* does not apply retroactively, regardless of whether we apply the retroactivity test found in *Witt* or *Teague*.  However, I also agree with the State's contention that we should reconsider *Witt* and write to explain why we should do so in a future case.

As the State highlights, *Witt*'s foundation has eroded.  In *Witt,* we adopted the *Linkletter* retroactivity test simply because it was the then-prevailing federal standard.  *See Witt*, 387 So. 2d at 926 (noting "the essential considerations in determining whether a new rule of law should be applied retroactively" were the three factors emanating from United States Supreme Court cases and Florida state court decisions applying United States Supreme Court

standards); *Johnson v. State*, 904 So. 2d 400, 414 (Fla. 2005) (Cantero, J., concurring) ("[I]n *Witt* we did not consciously decide to forge our own 'very different standard' of retroactivity. To the contrary, we *adopted* the then-existing federal standard."). But the United States Supreme Court abandoned the *Linkletter* test, and for good reason. *See* majority op. at 9 n.4 (noting pliability of multi-factor tests). In addition, the United States Supreme Court has since clarified that, absent a contrary pronouncement, we have no obligation to adopt and apply a federal standard applicable to federal habeas proceedings to state postconviction proceedings. *See, e.g., Edwards*, 593 U.S. at 271 n.6 (noting states remain free to retroactively apply a jury-unanimity rule as a matter of state law in state postconviction proceedings); *Danforth v. Minnesota*, 552 U.S. 264 (2008). *But see Montgomery v. Louisiana*, 577 U.S. 190 (2016).

So, while I agree we are justified in reconsidering *Witt*, I do not think our next step is to simply adopt the now-prevailing federal standard nor do I fully agree with the State's reasoning for why we should adopt *Teague*. Instead, it seems our primary endeavor should be to evaluate which retroactivity standard best gives effect to Florida's postconviction scheme. *See, e.g.,* Mary C. Hutton,

*Retroactivity in the States: The Impact of* Teague v. Lane *on State Postconviction Remedies*, 44 Ala. L. Rev. 421, 433 n.87 (1993) (citing 2 Steven A. Childress & Martha S. Davis, Federal Standards of Review 13-15 (2d ed. 1992)).

With that consideration in mind, both section 924.066, Florida Statutes (2024), and Florida Rule of Criminal Procedure 3.850 provide that individuals may claim relief from a judgment of conviction or sentence that was imposed in violation of the Constitution or law of the United States or the State of Florida. A retroactivity rule that best gives effect to these provisions may be one that generally prohibits retroactive application of judicial decisions unless those decisions are substantive in nature. In other words, courts would give retroactive effect only to those decisions that "alter 'the range of conduct or the class of persons that the law punishes.'" *Edwards*, 593 U.S. at 276 (quoting *Summerlin*, 542 U.S. at 353). By contrast, decisional changes related to procedural rules would not be applied retroactively because those rules are only "designed to enhance the accuracy of a conviction or sentence by regulating 'the *manner of determining* the defendant's

culpability.' " *Montgomery*, 577 U.S. at 201 (quoting *Summerlin*, 542 U.S. at 353).

I recognize that if this Court ultimately adopts such a standard, the test would essentially mirror *Teague* (without a watershed exception). Even so, I believe that it is necessary that we both critically evaluate retroactivity through a Florida-specific lens and clarify the independent grounds on which any future retroactivity test is based. That issue does not affect the outcome in this case, though, so I concur with the majority opinion.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance & Direct Conflict of Decisions

First District - Case No. 1D2020-2651

(Alachua County)

Dimitrios A. Peteves and Bryan S. Gowdy of Creed & Gowdy, P.A., Jacksonville, Florida,

for Petitioner

Ashley Moody, Attorney General, Henry C. Whitaker, Solicitor General, Jeffrey Paul DeSousa, Chief Deputy Solicitor General, and Allen L. Huang, Deputy Solicitor General, Tallahassee, Florida,

for Respondent

Diana L. Johnson, Assistant Public Defender, Fourth Judicial Circuit, Jacksonville, Florida, and Justin F. Karpf and Barbara J.

Busharis, Assistant Public Defenders, Second Judicial Circuit, Tallahassee, Florida,

for Amicus Curiae The Florida Association of Criminal Defense Lawyers